**YELLOW FREIGHT SYSTEM, INC., Petitioner,**

v.

**Lynn MARTIN, Secretary of the U.S. Department of Labor, Respondent,**

**Robert Spinner, Intervenor.**

**No. 294, Docket 92–4074.**

United States Court of Appeals, Second Circuit.

Submitted Nov. 16, 1992.

Decided Jan. 25, 1993.

Anthony J. McMahon, Washington, DC (Galland, Kharasch, Morse & Garfinkle, P.C.; Jeffrey I. Pasek, Cohen, Shapiro, Polisher, Shiekman and Cohen, Philadelphia, PA, of counsel), for petitioner.

Edward D. Sieger, Washington, DC (Marshall J. Breger, Allen H. Feldman, Steven J. Mandel, Deborah Greenfield, U.S. Dept. of Labor, of counsel), for respondent.

Ronald G. Dunn, Albany, NY (Gleason, Dunn, Walsh & O'Shea, of counsel), for intervenor.

John C. Russell, Pasadena, CA (Russell, Hancock & Jeffries, of counsel), for amicus curiae California Trucking Ass'n.

Before PRATT, ALTIMARI, Circuit Judges, and GERALD W. HEANEY, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

HEANEY, Senior Circuit Judge:

After administrative proceedings authorized under section 405 of the Surface Transportation Assistance Act of 1982 ("STAA"), 49 U.S.C.App. § 2305 (1988), the Secretary of Labor ordered Yellow Freight System, Inc. ("Yellow") to reinstate a discharged employee and pay compensatory damages and back pay. Yellow appeals from that order. We affirm.

## I

Federal Motor Carrier Safety Regulations require covered drivers to complete at the end of the day a "driver vehicle inspection report" that identifies the motor vehicle and any defects or deficiencies that would affect the safety of the vehicle's operation or result in mechanical breakdown. 49 C.F.R. § 396.11 (1988). A legible copy of the last vehicle inspection report must be carried in the power unit of each vehicle. *Id.* Before each trip, a driver must review the last vehicle inspection report and be satisfied that the vehicle is in safe operating condition. 49 C.F.R. § 396.13 (1988).

To comply with these federal safety regulations, Yellow truck drivers complete a vehicle inspection report after each trip indicating any maintenance or safety problems with their tractor-trailer rigs. Yellow drivers complete this report on Yellow's form "OD–199." As required by the regulations, each driver leaves a copy of this form in the tractor after the trip to alert the next driver to any safety concerns that might require correction.

Robert Spinner was a truck driver for Yellow who made regular trips between Cleveland, Ohio, and Maybrook, New York. In the morning of 3 October 1989, Spinner received an assignment to drive tractor 4805 and trailers 34443 and 30250 from Cleveland to Maybrook. The tractor connected to the assigned trailers, however,

had the number 4804 painted on it. Spinner inspected the form OD–199 in the cab of the tractor and found that, although it bore a correct odometer reading for tractor 4804, it nonetheless evidenced that it had been prepared for tractor 4805.

Spinner was troubled by the discrepancy and requested personnel in the dispatch office to help rectify the problem. There was no documentation in the dispatch office, however, to rebut the presumption that the OD–199 was for tractor 4805 instead of 4804. Spinner insisted that he could not legally drive the vehicle unless Yellow provided either documentation that resolved the apparent confusion or a replacement tractor. The Cleveland dispatcher denied Spinner's request, and told him simply to alter the number on the form OD–199 and get on the road. Spinner refused to resolve the problem in this way because he concluded that driving the truck without a proper form OD–199 would constitute a violation of the Federal Motor Carrier Safety Regulations. The dispute culminated in a recorded telephone conference call in which Spinner's New York dispatcher told him that his continued refusal to drive the rig would be deemed a voluntary termination. Spinner persisted and was fired.

## II

On 5 October 1989 Spinner filed a complaint with the Department of Labor, alleging that his termination by Yellow was a violation of sections 405(a) and (b) of the STAA. These provisions prohibit a motor carrier from discharging an employee in retaliation for making safety-related complaints or for refusing to operate a motor vehicle when such operation constitutes a violation of federal safety regulations. 49 U.S.C.App. § 2305(a), (b) (1988).

The Secretary of the Department of Labor has delegated authority to the Assistant Secretary for the Occupational Safety and Health Administration ("OSHA") to review these complaints and prosecute them if appropriate. The Regional Administrator for OSHA made an initial evaluation of Spinner's complaint and found reasonable

cause to believe the discharge violated section 405(b) of the STAA. On 15 December 1989 the Assistant Secretary issued those findings and ordered Spinner's reinstatement. Yellow disobeyed the order,[1] objected to the finding, and requested a hearing before an administrative law judge ("ALJ").

At about the same time, a grievance was filed under the terms of Spinner's collective bargaining agreement alleging wrongful discharge. The Assistant Secretary moved to postpone the administrative proceedings pending the outcome of the grievance arbitration proceeding. The ALJ granted the motion. An arbitrator heard that grievance on 30 March 1990, and ruled in favor of Yellow on 31 May 1990. The Assistant Secretary later deferred to the decision of the arbitrator on the 405(b) claim, and "decline[d] the role of prosecuting party," noting that Spinner and Yellow would "assume the roles" of complainant and respondent as provided for in the regulations.[2]

The arbitrator did not hear or resolve the section 405(a) (whistle-blower) claim, however, and Spinner requested a ruling from the Assistant Secretary on that claim. The Assistant Secretary then made a formal finding of no reasonable cause to believe a violation occurred under section 405(a). Spinner objected to the finding and requested a hearing. The claims were consolidated, and the proceedings before the ALJ continued without the prosecutorial assistance of the Assistant Secretary.

The ALJ ruled in favor of Spinner on both claims. Over objections by Yellow, the Secretary of Labor affirmed the findings of the ALJ, ordering Yellow to reinstate Spinner and pay compensatory damages and back pay. This appeal followed.

### III

 Yellow asserts that Spinner's claims of section 405 violations are without merit, and that we should reverse the contrary findings of the Secretary of Labor. After a review of the record, however, we find that the conclusions of the ALJ and the Secretary are sound and based on careful, well-substantiated findings.

The section 405(a) (whistle-blower) claim is based on complaints Spinner previously had made to the company and the Federal Highway Administration ("FHA"). The first was a written complaint to the company in June 1988 for warning him about refusing to drive when he alleged he was ill or fatigued. The second, in October 1988, arose from a confrontation with the dispatchers in Cleveland who declined to help with Spinner's concerns about another discrepancy on a form OD–199. He wrote a letter to company officials complaining about the incident. The letter upset the dispatchers in Cleveland who thought it was "extremely unfair."

In the October 1988 incident, the OD–199 form left in the tractor to which Spinner had been assigned had originally identified the tractor as number 3236. This number was crossed out and 3336 was written in its place. The number 3336 corresponded to the tractor Spinner was assigned to drive, but he brought the matter to the attention of the dispatcher, wanting to ascertain that the form did in fact pertain to tractor 3336. The dispatcher and his supervisor were uncooperative and uncomplimentary. Spinner solved the problem by consulting the documentation in the mechanics' shop.

In August 1989 Yellow formulated a company policy regarding missing or lost

---

**1.** Because Congress intended to protect the interests of whistle-blowers during the potentially lengthy hearing and appeal process, it provided for immediate reinstatement through preliminary orders to maintain the status quo until a final resolution of the dispute. Yellow had no right to disobey the order even if it objected to the findings and requested a hearing. The Secretary, moreover, bore an obligation to enforce such order, but failed in this case to carry out that responsibility. *See* 49 U.S.C.App. § 2305(e) (1988) ("Whenever a person has failed to com-

ply with an order issued under subsection (c)(2) of this section, the Secretary of Labor shall file a civil action ... to enforce such order.").

**2.** *See* 29 C.F.R. § 1978.107(b) (1988) ("In any case in which only the complainant objects to findings that the complaint lacks merit, to the preliminary order, or to both, the complainant shall be the prosecuting party. The Assistant Secretary may as of right intervene as a party at any time....").

forms OD–199. The policy required that if drivers found these forms missing or lost, they would have to conduct a pre-trip inspection themselves, and if they found nothing wrong, depart the terminal without incident. Spinner thought the policy was wrong and threatened in a meeting with a New York manager to complain to federal safety authorities. The manager admonished him against writing any more letters, but Spinner wrote on 7 and 8 September 1989 to the FHA regarding his complaints over driver fatigue and the vehicle inspection reports. The FHA discussed these letters with Yellow management.

Spinner was terminated less than a month later, during yet another confrontation with the Cleveland dispatchers over concerns about another vehicle inspection report. Both the ALJ and the Secretary, after reviewing these and related facts and after having the opportunity to assess the credibility of the witnesses, determined that Spinner's termination was motivated by his protected "whistle-blowing" conduct. We agree that the conclusions of the Secretary, finding a violation of section 405(a), are supported by substantial evidence in the record, and we therefore affirm.

 Spinner's section 405(b) claim alleges he was terminated for refusing to operate a vehicle when such operation would have constituted a violation of federal regulations. To be meritorious on a 405(b) claim, a driver must show that the operation would have been a genuine violation of a federal safety regulation at the time he refused to drive—a mere good-faith belief in a violation does not suffice. Yellow argues that the Secretary's ruling was based on an erroneous interpretation of the relevant Department of Transportation regulations, that there would have been no violation if Spinner had driven the assigned vehicle on 3 October 1989, and that his refusal to drive was therefore a legitimate cause for dismissal.

In retrospect, we now know that the error on the vehicle inspection report on 3 October 1989 was merely clerical. When Spinner was discharged that morning, however, neither the dispatchers nor Spinner had any tangible evidence to support such a determination. To have concluded at the time Spinner was terminated that the error was clerical and that the form OD–199 could safely be altered without infringing the regulations would have been pure speculation. To rule in hindsight that Spinner should have operated the vehicle in apparent violation of the regulations would serve neither good public policy nor the intent of Congress—particularly when the misunderstanding could have been clarified with the minimal cooperation of the dispatchers.[3] We conclude that substantial evidence in the record also supports the findings and order of the Secretary on Spinner's 405(b) claim, and we find no basis on which to reverse.

## IV

Yellow next contends that we must find the Assistant Secretary's deferral to the arbitral ruling to have been a final administrative determination of this matter. In support of this contention, Yellow argues that the statute does not allow a hearing when there is no preliminary finding that the complaint is meritorious, that policy requires definitive deferral to arbitral rulings, and that to allow a private complainant to proceed in an administrative forum, after a finding of no reasonable cause, deprives Yellow of constitutional rights.

### A

 Yellow interprets the language of the statute to authorize a hearing only if the Secretary, or her delegate, finds reasonable cause that a complaint has merit and issues a preliminary order. Yellow thus argues that department regulations allowing a hearing on a preliminary finding

---

**3.** There is another form used by Yellow, the "OD–69," that is prepared by the fuel lane mechanics when a rig arrives at a Yellow terminal. That form identifies the tractor and trailers as they arrive. In this case, Spinner asked to see that form to confirm that he had the correct OD–199, but the dispatchers refused to obtain it.

of no reasonable cause offend the underlying statute.

After a careful reading of the statute, we disagree with Yellow. The statute requires the Secretary to conduct an initial investigation to determine if reasonable cause exists, and to inform the parties of her findings. 49 U.S.C.App. § 2305(c)(2)(A) (1988). If the Secretary finds that reasonable cause exists, a preliminary order must accompany those findings. *Id.* After the Secretary issues her findings, the statute provides that "either the person alleged to have committed the violation or the complainant may, within thirty days, file objections to the findings or preliminary order, or both, and request a hearing on the record." *Id.* The statute does not condition the right to a hearing on a finding that reasonable cause exists.

### B

■ Yellow cites to cases arising under the National Labor Relations Act for the proposition that a deferral to an arbitral ruling is required and is determinative of the complaint. *See, e.g., NLRB v. Motor Convoy, Inc.,* 673 F.2d 734 (4th Cir.1982). Yellow's reliance on cases arising out of this distinct regulatory scheme is misplaced, however, because as the *Motor Convoy* court held, the National Labor Relations Board ("NLRB") has a decades-old policy of deferral to arbitration awards resolving unfair labor practice charges, and the NLRB must follow that policy until it explicitly adopts a different policy through formal rulemaking or adjudicative procedures. *Id.* at 735–36. No similarly explicit, long-standing departmental policy is implicated in the instant case.

The NLRB cases are also distinct because, unlike the regulations implementing the STAA, the NLRB has no regulatory provision allowing complainants to prosecute their cases in their own name after a preliminary determination of no reasonable cause. Under the STAA, both the statute and the regulations give the complainant the right to a hearing before an ALJ if the complainant objects to a finding of no merit issued by the Assistant Secretary. Absent department policy and regulation to the contrary, we hold that right is not lost because the preliminary findings of the Assistant Secretary defer to the decision of an arbitrator.

As an additional point, we note that because the arbitrator did not dispose of the section 405(a) claim, Spinner would have been entitled to a hearing on that claim even if the Assistant Secretary's deferral to the arbitration were determinative of the 405(b) claim. Because the ALJ and the Secretary found violations under both sections 405(a) and 405(b), the Secretary's order could not be reversed on this basis.

### C

■ Yellow also asserts that the statute and regulations are constitutionally infirm if they permit a complainant to prosecute his own claim after the Assistant Secretary makes a finding of no reasonable cause to believe a violation has occurred, and declines to prosecute. Yellow argues that once the Assistant Secretary makes a preliminary finding of no reasonable cause or defers to an arbitration that finds no violation, the public interest to be protected has been served; to allow a complainant to continue to press his case before the ALJ subjects Yellow to a strictly private claim for damages in violation of its Seventh Amendment right to an Article III court and a jury. We do not agree.

■ The government need not be a party for a case to revolve around "public rights." *Granfinanciera v. Nordberg,* 492 U.S. 33, 54, 109 S.Ct. 2782, 2796, 106 L.Ed.2d 26 (1989). The Supreme Court instructs us that the crucial question is whether Congress, acting for a valid legislative purpose, has created a seemingly private right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary. *Id.* This case presents precisely that situation.

The public interest to be protected in this case is safety on the nation's highways. To protect that interest, Congress has cre-

ated an extensive public regulatory scheme that includes parts of the STAA. In enacting the STAA, "Congress recognized that employees in the transportation industry are often best able to detect safety violations and yet, because they may be threatened with discharge for cooperating with enforcement agencies, they need express protection against retaliation for reporting these violations." *Brock v. Roadway Express, Inc.*, 481 U.S. 252, 258, 107 S.Ct. 1740, 1746, 95 L.Ed.2d 239 (1987) (citations omitted). Thus, while Spinner's continued prosecution of his own case without the participation of the Department of Labor may seemingly subject Yellow to the enforcement of merely private rights, we hold that those rights are integrated sufficiently closely into a public regulatory scheme as to be appropriate for agency resolution.

## V

Yellow also asserts the affirmative defense that Spinner failed properly to mitigate his damages. After a careful review of the record, we find the Secretary's decision that Spinner mitigated his damages to be reasonably supported by the facts and the law. We accordingly decline to reverse the order to pay back wages.

Yellow's other procedural attacks on the Secretary's decision and order are without merit. Yellow, for example, contends that the 405(b) claim is not ripe because of a legal dispute between the Department of Labor and the Department of Transportation. We find this argument frivolous.

Yellow also alleges that the Secretary of Labor did not personally review the facts of this case and that her purported decision, therefore, is not statutorily valid. Yellow cites *Morgan v. United States*, 298 U.S. 468, 481, 56 S.Ct. 906, 912, 80 L.Ed. 1288 (1936), for the proposition that "[t]he one who decides must hear." In *KFC National Management Corp. v. NLRB*, 497 F.2d 298 (2d Cir.1974), *cert. denied*, 423 U.S. 1087, 96 S.Ct. 879, 47 L.Ed.2d 98 (1976), however, this court held that "those legally responsible for a decision must in fact make it, but that their method of doing so—their thought processes, their reliance on their staffs—is largely beyond judicial scrutiny." *Id.* at 304. Yellow points to our further holding that if there is "a *prima facie* demonstration of impropriety, the courts will inquire into the administrative process in order to insure that the decision making was informed, unbiased, and personal." *Id.* at 305. Yellow, however, fails to make a *prima facie* demonstration of impropriety in this case; its demonstration is a mere bald assertion combined with evidence that the Secretary's signature may have been produced by a rubber stamp. We find no merit to Yellow's assertion of impropriety.

Accordingly, based on the foregoing, we affirm the order of the Secretary of Labor.