**Michael HARRISON, Petitioner,**

v.

**ADMINISTRATIVE REVIEW BOARD, U.S. DEPARTMENT OF LABOR, Respondent,**

**Roadway Express, Inc., Intervenor.**

**Docket No. 03–4428.**

United States Court of Appeals, Second Circuit.

Argued: April 15, 2004.

Decided: Nov. 30, 2004.

Paul O. Taylor, Truckers Justice Center, Burnsville, MN, for Petitioner.

Edward D. Sieger, Senior Appellate Attorney, U.S. Department of Labor, Washington, D.C. (Howard M. Radzely, Solicitor of Labor; Allen H. Feldman, Associate Solicitor; Nathaniel I. Spiller, Deputy As-

sociate Solicitor, on the brief), for Respondent.

Paul M. Sansoucy, Bond, Schoeneck & King, PLLC, Syracuse, NY, for Intervenor.

Before: LEVAL and CALABRESI, Circuit Judges, and RAKOFF, District Judge.[*]

LEVAL, Circuit Judge.

Michael Harrison, a laborer employed by the intervenor Roadway Express, a trucking company, brought this petition to review a decision of the Administrative Review Board of the United States Department of Labor regarding Harrison's claim that he had been wrongfully discharged in violation of the Surface Transportation Assistance Act (STAA), 49 U.S.C. § 31105. He claims that he was fired in retaliation for performing activities protected by the Act, namely inspecting a "yard horse" and "red-tagging" yard horses and truck trailers in violation of company policy. We agree with the Review Board's conclusion that the Act does not protect the activities for which Harrison was discharged, and that his discharge was thus not unlawful.

## Factual Background

Harrison began working for Roadway in 1989. In April 1997, he transferred to its Buffalo terminal, where he worked as a "switcher." As a switcher, he had two major duties: First, he operated a "yard horse," a tractor used to maneuver trailers from point to point within the terminal. Second, he was responsible for "dropping and hooking," which involves decoupling trailers from inbound over-the-road tractors and recoupling them to outbound tractors.

As part of its overall safety procedures, Roadway employed a "red-tagging" system. If a switcher observed any serious safety defects, he was to attach the top half of a red tag to the defective equipment, and deliver the bottom half of the tag to the Relay Department at the end of his shift. The top half of the tag then served as a notice that the equipment was out of service until mechanics could assess and repair it. Over the summer of 1997, Roadway made various changes to its red-tagging policy. A July 9 memorandum revoked the authority of switchers to red-tag. Two weeks later, a July 22 memorandum reinstated the original policy. Finally, a memorandum issued on August 6 authorized switchers to tag equipment, but only with the prior approval of Relay Department supervisors. Petitioner was personally counseled even before August 6 not to red-tag without authorization.

Petitioner admitted that he did not comply with the prior-approval policy. According to his contentions, because he occasionally found red tags that he had placed on equipment "scattered on the ground," and the equipment itself back in the yard with the same defects, he felt compelled to continue red-tagging even without approval. Between August 5, 1997 and January 14, 1998, petitioner was disciplined six times—three times by written warning and three times by suspension—for unauthorized red-tagging.

Six months later, on June 12, 1998, petitioner filed a complaint about yard horse safety with the Occupational Safety and Health Administration (OSHA), prompting OSHA representatives to make a surprise inspection of Roadway's Buffalo terminal

---

[*] The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation.

the next week. In front of Roadway personnel, petitioner informed the inspectors that he was the one who had filed the complaint. Later that day, petitioner was told to move a defective trailer either "to the garage" (according to his recollection) or "behind the garage" (according to his supervisors' recollection); he eventually moved the trailer *into* the garage without having first obtained a mechanic's permission, which constituted a violation of Roadway's safety policy. For that violation, and for his "overall work record," Roadway suspended petitioner for ten days.

Two weeks later, on July 2, 1998, after a supervisor claimed to observe petitioner "performing an unsafe and unauthorized vehicle inspection" of a yard horse, Roadway terminated him. Petitioner grieved the discharge, but it was eventually upheld by the union-management committee.

### Proceedings Below

Petitioner filed a complaint with OSHA, charging that his termination constituted unlawful retaliation for safety-related activities protected by the STAA, namely his OSHA complaint about the yard horses, the yard horse inspection that immediately precipitated his termination, and his red-tagging of yard horses and trailers. The OSHA Administrator found the complaint without merit. Harrison next requested a hearing before an administrative law judge ("ALJ"). After hearing testimony, the ALJ found that petitioner's yard horse activity was not protected by the STAA because yard horses are not "commercial motor vehicles" under the statutory and regulatory definition. But the ALJ also found that petitioner's red-tagging of trailers (trailers being commercial motor vehicles) was protected under the "filed a complaint" subsection of the STAA, and that Roadway had impermissibly terminated petitioner in part for red-tagging trailers.

*See* 49 U.S.C. § 31105(a)(1)(A). In response to Roadway's assertion that it legitimately fired petitioner not for red-tagging *per se* but for red-tagging without supervisory approval in contravention of policy, the ALJ found that the policy was not dispositive so long as the red-tagging was in "good faith." The ALJ reasoned that Roadway's "legitimate interest in preventing delays is entitled to less weight than Complainant's legitimate concern about safety defects he discovered in the course of performing his duties." The ALJ further found that two of Roadway's other asserted reasons for terminating petitioner—the unauthorized yard horse inspection, and petitioner's overall work performance—were pretexts for retaliation. Although the ALJ accepted that the June 1998 suspension for moving the trailer into the garage was not pretextual, he found that Roadway had not established that it would have fired petitioner even if he had not engaged in the protected red-tagging activity.

The Department of Labor Administrative Review Board reversed the ALJ's ruling and denied Harrison's complaint. The Board agreed that yard horses were not covered by the STAA, and that the only potentially protected activity was petitioner's red-tagging of trailers. The Board accepted the contention that internal complaints to *management* about trailer safety would be protected under the "filed a complaint" language of the STAA. But the Board found that because petitioner's red-tagging invariably followed radio notifications to supervisors, the red-tagging itself was no more than a mechanism for communicating safety concerns to nonsupervisory *coworkers,* which the Board held was not protected by the statute. Even assuming that the STAA protects safety communications with coworkers, the Board found that petitioner had not been discharged for red-tagging *per se,* but for violating Road-

way's legitimate policy requiring supervisory approval before tagging.

Petitioner now seeks review of the Board's decision, and Roadway intervenes on the Board's behalf.

### Discussion

On appeal, petitioner contends (1) that yard horse inspections, complaints, and red-tagging are protected under the STAA; (2) that red-tagging, insofar as it includes safety communications with co-workers, is protected activity under the STAA; and (3) that his discharge was motivated, at least in part, by his red-tagging of trailers. Roadway counters (1) that yard horse activities are not protected because yard horses are not commercial motor vehicles under the STAA; (2) that internal safety complaints are protected by the STAA only if communicated to management; and (3) that in any case, petitioner was fired not for complaining but for violating its legitimate red-tagging procedures.

We sustain the Review Board's determinations that petitioner's yard horse inspections were not protected and that to the extent his discharge was based on red-tagging trailers, it was based not on protected activity but on the violation of Roadway's legitimate red-tagging policy. These determinations were supported by substantial evidence and were not arbitrary. 5 U.S.C. § 706; *Brink's, Inc. v. Herman*, 148 F.3d 175, 178–79 (2d Cir. 1998).

### 1. Yard Horses Are Not Commercial Motor Vehicles.

■ We begin by affirming the Review Board's decision that petitioner's inspection and red-tagging of Roadway's yard horses was not protected under the STAA's "filed a complaint" subsection, be-cause the yard horses are not commercial motor vehicles. The statute provides:

> A person may not discharge an employee, or discipline or discriminate against an employee regarding pay, terms, or privileges of employment, because ... (A) the employee, or another person at the employee's request, has filed a complaint or begun a proceeding related to a violation of a *commercial motor vehicle* safety regulation, standard, or order, or has testified or will testify in such a proceeding ....

49 U.S.C. § 31105(a)(1) (emphasis added). Section 31101(1) of the same Title defines "commercial motor vehicle" as "a self-propelled or towed vehicle *used on the highways* in commerce principally to transport passengers or cargo" (emphasis added), with other caveats not relevant here. Department of Transportation regulations in turn define "highway" as

> any road, street, or way, whether on public or private property, *open to public travel*. "Open to public travel" means that the road section is available, except during scheduled periods, extreme weather or emergency conditions, passable by four-wheel standard passenger cars, and *open to the general public for use without restrictive gates, prohibitive signs*, or regulation other than restrictions based on size, weight, or class of registration.

49 C.F.R. § 390.5 (emphasis added).

Petitioner argues that the yard horses are commercial motor vehicles because Roadway's yard is a highway. He argues that the yard qualifies as a highway be-cause at the relevant time it lacked a restrictive gate or sign, and members of the public were seen driving around in the yard. But the ALJ credited evidence that there was "at least one sign which prohibited unauthorized persons and private vehicles from entering the yard," and more-

over that the whole terminal was enclosed by a chain link fence.

Petitioner's secondary argument is that Roadway's yard horses, if not commercial vehicles themselves, become commercial vehicles when they are physically linked to trailers for towing purposes. It is not disputed that the trailers are commercial motor vehicles because they are generally used on highways; petitioner notes that when a trailer is connected to a yard horse for towing in the yard, the two vehicles' electrical and brake systems work together. But whether a yard horse is a commercial motor vehicle depends on the statute and implementing regulations. Even when linked to a trailer, the yard horse is not "used on the highways." For the same reason, a complaint relating to a yard horse would not "relate[ ] to a violation of a commercial motor vehicle safety regulation" merely because the yard horse is physically conjoined with a nondefective commercial motor vehicle.

■ Petitioner also invokes the STAA's "refuses to operate" subsection as protection for his yard horse inspection. That subsection provides that employees may not be disciplined for "refus[ing] to operate a vehicle because ... the operation violates a regulation, standard, or order of

the United States related to commercial motor vehicle safety or health." 49 U.S.C. § 31105(a)(1)(B)(i). Petitioner argues that his inspection of yard horses before using them to tow the trailers was necessary to insure compliance with commercial motor vehicle safety regulations governing the trailers. But the regulations to which he points do not govern the safety of other vehicles towing commercial motor vehicles, only the safe condition and working order of the commercial motor vehicles themselves. *See* 49 C.F.R. §§ 392.7, 396.13.[1] In any case, petitioner disclaimed reliance below on the "refuses to operate" subsection of § 31105(a)(1), relying only on the "filed a complaint" subsection.

## 2. Petitioner Was Not Fired for Safety Complaints.

The Review Board concluded that red-tagging trailers is not protected under the STAA because its communicative function relates to coworkers rather than supervisors. Petitioner argues that safety notices to coworkers deserve the same protection under the STAA's "filed a complaint" language as complaints to management.[2]

■ We do not address this question of statutory interpretation, because the Re-

---

1. Section 396.13 refers to "a motor vehicle" rather than a "commercial motor vehicle," but even if we assume the two terms have distinct meanings, it does not help petitioner because 49 U.S.C. § 31105(a)(1)(B) covers only a person who refuses to operate a vehicle if such operation would violate a *commercial* motor vehicle standard.

2. We note that we have never squarely addressed the question whether § 31105(a)(1)(A)'s "filed a complaint" language covers internal complaints to company management rather than merely official complaints filed with outside regulatory bodies such as OSHA. Other circuits and the Department of Labor have held that internal complaints are covered by the statute. *See, e.g.,*

*Clean Harbors Envtl. Servs., Inc. v. Herman,* 146 F.3d 12, 19 (1st Cir.1998); *Schulman v. Clean Harbors Envtl. Servs., Inc.,* ARB No. 99–015, ALJ No. 98–STA–24, 1999 DOL Ad. Rev. Bd. LEXIS 103, *13, 1999 WL 907649, *5 (ARB Oct. 18, 1999).

In *Lambert v. Genesee Hospital,* 10 F.3d 46 (2d Cir.1993), we construed similar language in the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), not to protect informal complaints to supervisors. *Genesee Hosp.,* 10 F.3d at 55–56 (distinguishing *Brock v. Casey Truck Sales, Inc.,* 839 F.2d 872, 879 (2d Cir. 1988)). *But see Lambert v. Ackerley,* 180 F.3d 997, 1001 (9th Cir.1999) (en banc); *Yellow Freight Sys., Inc. v. Martin,* 983 F.2d 1195, 1198 (2d Cir.1993).

view Board's secondary holding is sufficient to support its decision. Even assuming that communications to coworkers could constitute protected complaints under the STAA, petitioner failed to demonstrate at trial that he was discharged for communicating safety concerns. Rather, to the extent that Roadway discharged petitioner for red-tagging, the evidence showed that it did so because he repeatedly violated Roadway's legitimate policy requiring supervisory approval before removing vehicles from service.

As the Review Board observed, red-tagging has multiple components. The components can be seen on the red tag itself. The top of the tag states in large bold letters: **OUT OF SERVICE**. There are then blank lines for the date, unit number, location, and signature, as well as three blank lines for "reason." The bottom half of the tag breaks away, and is identical except that it lacks the "out of service" heading. The top half, when affixed to the purportedly defective equipment, serves as a communication to coworkers, and under company policy automatically takes the vehicle out of service until the mechanics can repair it. The bottom half, which is delivered to the Relay Department and supervisors therein at the end of each shift, communicates that the vehicle has been tagged and removed from service.

■ Under Roadway's policy articulated in the August 6 memorandum, designed to control the removal of vehicles from service, switchers were not permitted to red-tag vehicles without first obtaining supervisory authorization. Petitioner admitted violating that policy on multiple occasions.

His disciplinary record bears out the admission, and his disciplinary notices state that discipline was merited not because petitioner communicated safety concerns, or even generally because he red-tagged, but specifically because he violated policy by red-tagging without authorization and taking vehicles out of service on his own initiative. His August 5, 1997 notice cited him for "performing duties that are not part of your job responsibilities. Please be reminded that you are never to put a red tag on any piece of equipment unless you have Relay approval." The January 14, 1998 notice suspended petitioner for five days because he " 'red tagged' trailer 72900 without notifying and/or authorization from Relay Dispatch." The other notices cited "failure to follow procedures" and instructions. The STAA prohibits employers from disciplining employees in retaliation for filing safety complaints; it also authorizes employees to refuse to drive unsafe vehicles. *See* 49 U.S.C. § 31105(a)(1). But it does not guarantee to employees the entitlement to use their own judgment to determine when to take equipment out of service.[3]

■ The ALJ's decision in petitioner's favor failed to distinguish between the protected safety-warning aspect of red-tagging and its unprotected effect of taking the vehicle out of service. The ALJ stated that "had Complainant not red-tagged, he would not have been disciplined. Therefore, I find that Complainant was disciplined for his protected activity of red-tagging." But the fact that petitioner was entitled, within the Act's protection, to ad-

---

**3.** Petitioner argues that because several of the notices emphasize that the tagged equipment was later found to be compliant by Roadway's mechanics, the discipline was motivated not merely by unauthorized red-tagging, but also by differences of opinion regarding compliance. The distinction is immaterial.

Petitioner is entitled to relief only if he was discharged for protected activity. Even if Roadway disciplined employees only for policy violations that were particularly bothersome (because they took out of service vehicles later determined to be complaint), it would not thereby run afoul of the STAA.

vise of safety concerns regarding a trailer does not support the proposition that he was entitled, within the Act's protection, to take the vehicle out of service. He communicated the protected warning by recourse to an unprotected act which was forbidden by company policy. An employee's entitlement to submit a complaint about a vehicle's safety would not mean that the employee was similarly entitled to attach the complaint to a rock and throw it through his supervisor's window. The employee's protected right to complain would not prevent Roadway from disciplining the employee for communicating his complaint by rock-throwing. Similarly, the fact that Harrison was entitled to complain about the safety of a vehicle does not protect his decision to make that complaint by unauthorized use of a red tag, taking the vehicle out of service. "[I]nsubordination and conduct that disrupts the workplace are legitimate reasons for firing an employee," and an employer may discharge an employee for inappropriate forms of complaint even if the complaint itself has substance. *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir.2000) (noting that plaintiff's discrimination complaints "led to unseemly confrontations between [plaintiff] and his supervisors, and caused workplace disruption") (internal quotation marks omitted); *see also Consolidation Coal Co. v. Marshall*, 663 F.2d 1211, 1216–17 (3d Cir.1981) ("A fair reading of the record indicates that the 'real' reason that [petitioner] was fired was for his shutting down of the machine, and not for his walking off the job nor for his complaints ...."). The Review Board rightly found that Roadway's policy of requiring supervisory approval before red-tagging was not inconsistent with the STAA. "The red-tagging policy did not inhibit, restrict, or otherwise limit [petitioner's] ability to make a safety-related complaint about the trailers." Petitioner was free to file a complaint warn-

ing about a vehicle's safety by another means that did not involve taking the vehicle out of service without authorization.

Petitioner also contends that the Review Board improperly disregarded the ALJ's factfinding when the Board held that petitioner was fired for violating policy rather than for complaining. *See* 29 C.F.R. § 1978.109(c)(3) ("The findings of the administrative law judge with respect to questions of fact, if supported by substantial evidence on the record considered as a whole, shall be considered conclusive."). But the Review Board did not quarrel with the ALJ's factual determination that the discharge was motivated in part by petitioner's red-tagging. Rather, it took issue with the ALJ's *legal* determination that the STAA precludes firing for "good faith" red-tagging. The Review Board's finding that Roadway's policy did not interfere with its employees' ability to complain when necessary—indeed, that petitioner "engaged in protected activity freely and often" without corresponding discipline—was supported by the record.

We note in closing the ALJ's finding that two of the alternative reasons cited by Roadway for discharging petitioner—unauthorizedly inspecting the yard horse and his overall work performance—were pretextual. We do not reexamine that finding because, even if the asserted grounds were pretextual, they were only pretexts for other disciplinary grounds that do not invoke the protection of the STAA. *Cf. James v. New York Racing Ass'n*, 233 F.3d 149, 155–56 (2d Cir.2000). The finding of pretext is thus legally irrelevant.

## Conclusion

The petition for review is DENIED.