[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14850
_____

ARB No. 10-001

KOCH FOODS, INC.,

Petitioner,

versus

SECRETARY, UNITED STATES DEPARTMENT OF LABOR,
and TIMOTHY BAILEY,

Respondents.

_____

Petition for Review of a Decision of the
Administrative Review Board

_____

(March 11, 2013)

Before MARCUS and PRYOR, Circuit Judges, and FRIEDMAN,[*] District Judge.

FRIEDMAN, District Judge:

Petitioner Koch Foods, Inc. appeals the final decision and order issued by

the Administrative Review Board (ARB) of the Department of Labor (DOL), in

---

[*] Honorable Paul L. Friedman, United States District Judge for the District of Columbia, sitting
by designation.

which the ARB determined that Koch Foods had violated the whistleblower protection provision of the Surface Transportation Assistance Act (STAA) by firing its employee, respondent Timothy Bailey.

Congress passed the STAA's whistleblower provision in 1983 to "protect[] employees in the commercial motor transportation industry from being discharged in retaliation for refusing to operate a motor vehicle that does not comply with applicable state and federal safety regulations or for filing complaints alleging such noncompliance." Brock v. Roadway Express, 481 U.S. 252, 255 (1987). The current version of the statute protects from retaliation employees who engage in certain protected activities, one of which is refusing to operate a motor vehicle "because . . . the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security." 49 U.S.C. § 31105(a)(1)(B)(i) (Supp. V 2012). This appeal presents a question of statutory interpretation: Is protection under Section 31105(a)(1)(B)(i) triggered only when operation of the motor vehicle would result in an actual violation of law? Or may the ARB interpret the provision to cover circumstances in which a driver reasonably but incorrectly believes that operation would result in a legal violation?

Koch Foods argues that Section 31105(a)(1)(B)(i) unambiguously protects an employee's refusal to drive only if driving would have resulted in an actual

2

violation of law.  Respondent, the Secretary of Labor, contends that the statute is ambiguous, and that the ARB's interpretation of this clause as incorporating a subjective belief element is reasonable and entitled to Chevron deference.  See Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)

After reviewing the plain language of the provision and its statutory context, as well as the relevant statutory history, we hold that the phrase "refuses to operate a vehicle because . . . the operation violates a regulation, standard, or order," as used in 49 U.S.C. § 31105(a)(1)(B)(i), refers only to circumstances in which operation would result in an actual violation of law.  Accordingly, we vacate the ARB's decision and remand so that the ARB may evaluate whether the operation of Mr. Bailey's assigned vehicle would have resulted in an actual violation of a regulation, standard or order related to commercial motor vehicle safety, health, or security.

## I.  BACKGROUND

Timothy Bailey worked as a driver transporting chickens from farms to a Tyson Foods plant for four years until May 2007, when Koch Foods purchased the plant where Mr. Bailey worked and became his new employer.  Koch Foods introduced to the company fleet a new type of trailer, which was longer and could carry more chicken cages.  Soon after, Bailey noticed that some of the new trailers

3

were arriving at Koch Foods' processing plant overweight – that is, above the 80,000 pound weight limit mandated by federal and state law.

On his July 25, 2007 drive, Mr. Bailey observed that his tractor-trailer, at approximately 84,000 pounds, was overweight, but he did not inform his supervisor of the problem. The next day, when Bailey arrived at the farm and found the same type of trailer waiting for him, he perceived it as overweight and refused to drive it back to the plant. Another driver pulled the trailer assigned to Bailey, who then waited about half an hour while the crew loaded a different type of trailer, which Bailey pulled back to the plant. Although Bailey could have called his boss from the farm, he did not do so that day.

Early the next morning, Mr. Bailey notified his supervisor, Tim Graul, of the event. Bailey was suspended for three days; upon returning to work after his suspension, he was notified that he was fired for refusing a reasonable assignment and causing a slowdown in production. Bailey was unemployed from August until December 2007, when he took a job as a dispatcher at Tyson Foods.

Mr. Bailey filed a complaint with the Occupational Safety and Health Administration (OSHA), arguing that he was fired for refusing to drive a vehicle he believed was overweight in violation of state and federal law. Bailey claimed that his termination violated the whistleblower protections of the STAA, and OSHA determined that Bailey's complaint had merit. At an administrative hearing

4

on the merits, the administrative law judge (ALJ) heard testimony from Bailey that he had seen overweight trailers on the scales in the scale house and had made a few runs with overweight trailers. The ALJ admitted into the record weight tickets dated July 16, 2007 and July 25, 2007 for tractor-trailers weighing over the 80,000 pound weight limit.

The ALJ also heard testimony from Bailey's supervisor, Tim Graul, that the farm staff had been instructed to cease over-packing chickens into trailers, and that the supervisor who had overseen the packing of chickens on July 16, 2007 had been removed from his supervisory position. The safety manager for Koch Foods, Jon Burdick, also testified that the issue of overweight tractor-trailers had been addressed. In addition, Mr. Graul testified that he had seen the weight ticket for the tractor-trailer that Bailey refused to drive and that the trailer, in fact, was not overweight. The weight ticket was not admitted into the record.

The ALJ found that Mr. Bailey's belief that the vehicle was unlawfully overweight was objectively reasonable. The ALJ made no formal findings as to whether the vehicle Bailey refused to operate actually was overweight, concluding that Bailey's reasonable belief was sufficient to render Bailey's refusal a protected activity under the STAA. The ALJ issued a recommended decision and order in favor of Mr. Bailey.

5

The ARB affirmed the ALJ's decision.  In doing so, the ARB undertook a detailed examination of the statute.  It acknowledged that its prior decisions "appear[ed] to require that the employee's refusal to haul be based on an 'actual' violation of a safety regulation."  Nevertheless, the ARB concluded that the statute was ambiguous as to whether the operation of a vehicle by an employee actually had to violate the law for that refusal to be protected.

The ARB then stated that, in light of the history and purpose of the statute, "the protection afforded under Section 31105(a)(1)(B)(i) also includes refusals where the operation of a vehicle would actually violate safety laws under the employee's reasonable belief of the facts at the time he refuses to operate a vehicle, and that the reasonableness of the refusal must be subjectively and objectively determined."  The ARB thus upheld the ALJ's conclusion that an employee was not required to show that operation of the vehicle actually would have violated a safety law.

The ARB also affirmed the ALJ's award to Mr. Bailey of $944.68 per week during the time that he was suspended or unemployed, $339.24 per week during the time that he was employed but earning a reduced wage, and $8000 in compensatory damages.

Koch Foods appeals this decision on two grounds.  First, it argues that the ARB has misread the statute and imposed a "reasonable belief" standard where

6

none exists.  Koch Foods contends that Mr. Bailey's refusal to drive cannot be a protected activity unless the record shows that operation of the vehicle would have resulted in an actual violation of law.  Second, Koch Foods asserts that the award of damages is not supported by substantial evidence.

## II.  STANDARD OF REVIEW

In reviewing appeals arising from the STAA's whistleblower provision, we conform to the standard of review set forth in the Administrative Procedure Act, 5 U.S.C. §701 et seq.  49 U.S.C. § 31105(d).  "The Secretary's interpretation of the [Surface Transportation Assistance] Act will be deemed correct 'if it reflects a plausible construction of the plain language of the statute and does not otherwise conflict with Congress' expressed intent.'"  Trans Fleet Enters., Inc. v. Boone, 987 F.2d 1000, 1004 (4th Cir. 1993) (quoting Rust v. Sullivan, 500 U.S. 173, 184 (1991)); see also Fields v. U.S. Dep't of Labor Admin. Review Bd., 173 F.3d 811, 813 (11th Cir. 1999) ("Appropriate deference must be given to statutory interpretation by the ARB.").  But the court "appl[ies] the statutory language as written when it is unambiguous."  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1299 (11th Cir. 2011) (citing Chevron, 467 U.S. at 842-43).

When determining whether to defer to an agency's interpretation of a statute it implements, the court follows the established Chevron framework.  "In the first step . . . we apply the traditional tools of statutory construction to ascertain whether

7

Congress had a specific intent on the precise question before us." Friends of Everglades v. S. Fla. Water Mgmt. Dist., 570 F.3d 1210, 1222-23 (11th Cir. 2009). "If Congress did, then the statute is not ambiguous and Chevron has no role to play." Id. at 1223. The court reaches Chevron step two only if the statute "is silent or ambiguous with respect to the specific issue" being interpreted by the agency. Nat'l Ass'n of State Util. Consumer Advocates v. F.C.C., 457 F.3d 1238, 1253 (11th Cir. 2006) (citing Chevron, 467 U.S. at 843); see also Sierra Club v. Johnson, 541 F.3d 1257, 1264-65 (11th Cir. 2008). Where the court finds that the statute is clear, as it does here, no deference is accorded to the agency's interpretation.

## III.    DISCUSSION

### A.

"We begin our construction of [Section 31105(a)(1)(B)(i)] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." DIRECTV, Inc. v. Brown, 371 F.3d 814, 817 (11th Cir. 2004) (quoting Harris v. Garner, 216 F.3d 970, 972 (11th Cir. 2000) (en banc)). Where the statute does not expressly define a term, "we look to the common usage of words for their meaning." Jackson v. State Bd. of Pardons and Paroles, 331 F.3d 790, 795 (11th Cir. 2003) (quoting CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1222

(11th Cir. 2001)).  Courts often look to the dictionary definitions of terms to

determine their common usage.  Id.

The relevant portion of the statute, as amended in 2007, provides:

(1) A person may not discharge an employee, or discipline or
discriminate against an employee regarding pay, terms, or privileges
of employment, because –

> (A)    (i) the employee, or another person at the
> employee's request, has filed a complaint or begun
> a proceeding related to a violation of a commercial
> motor vehicle safety or security regulation,
> standard, or order, or has testified or will testify in
> such a proceeding; or
>
> (ii) the person perceives that the employee has
> filed or is about to file a complaint or has begun or
> is about to begin a proceeding related to a violation
> of a commercial motor vehicle safety or security
> regulation, standard, or order;
>
> (B)    the employee refuses to operate a vehicle because –
>
> (i) the operation violates a regulation, standard, or
> order of the United States related to commercial
> motor vehicle safety, health, or security; or
>
> (ii) the employee has a reasonable apprehension of
> serious injury to the employee or the public
> because of the vehicle's hazardous safety or
> security condition;

* * *

(2) Under paragraph (1)(B)(ii) of this subsection, an employee's
apprehension of serious injury is reasonable only if a reasonable
individual in the circumstances then confronting the employee would
conclude that the hazardous safety or security condition establishes a

9

real danger of accident, injury, or serious impairment to health. To qualify for protection, the employee must have sought from the employer, and been unable to obtain, correction of the hazardous safety or security condition.

49 U.S.C. § 31105(a) (Supp. V 2012).

The parties dispute the meaning of that portion of the statute that prohibits an employer from disciplining or discriminating against an employee "because . . . the employee refuses to operate a vehicle <u>because . . . the operation violates</u> a regulation, standard, or order of the United States related to commercial motor vehicle safety, health, or security[.]"  49 U.S.C. § 31105(a)(1)(B) (emphasis added).

In drafting this subparagraph, Congress employed the phrase "because . . . the operation violates" unadorned by any reference to the employee's belief.  A plain reading of the text, therefore, suggests that an actual violation of a regulation, standard, or order must occur as a result of the operation of the vehicle.  The Secretary argues, however, that the word "because" signifies that the employee's subjective understanding is sufficient to trigger protection under this provision.  This interpretation reads too much into the term "because".  Webster's Dictionary defines "because" as "for the reason that," "the fact that," and "on account of being."  <u>Merriam-Webster's Third New International Dictionary Unabridged</u>, http://mwu.eb.com/mwu (Accessed February 28, 2013).  The word "because" suggests a causal connection between the employee's refusal and the violation, but,

10

by definition, it does not mean that the violation <u>need</u> <u>only</u> be subjectively perceived by the employee. While a subjective understanding or perception of a violation may be necessary, it is not sufficient in itself.

The ARB's interpretation is also inconsistent with the structure of the statute. See <u>Edison v. Douberly</u>, 604 F.3d 1307, 1310 (11th Cir. 2010) ("[W]e do not look at one word or term in isolation but rather look to the entire statute and its context."). Section 31105(a)(1)(B) sets forth two protected categories of refusals to drive – "commonly referred to" by the ARB itself as the "actual violation" and the "reasonable apprehension" categories. <u>Shields v. James E. Owen Trucking, Inc.</u>, ARB Case No. 08-021, 2009 WL 4324727, at *3 (Dep't of Labor Nov. 30, 2009); <u>Pollock v. Cont'l Express</u>, ARB Case Nos. 07-073, 08-051, at *8 (Dep't of Labor Apr. 7, 2010); <u>Wrobel v. Roadway Express, Inc.</u>, ARB Case No. 01-091, 2003 WL 21788036, at *4, n.4 (Dep't of Labor July 31, 2003).

In its prior decisions, the ARB has described Section 31105(a)(1)(B)(i) as the "actual violation" category, in which the employee's refusal is protected "only if the record establishes that the employee's driving would have violated a motor vehicle regulation, standard, or order." <u>Shields</u>, 2009 WL 4324727, at *3; see <u>also</u> <u>Cummings v. USA Truck, Inc.</u>, ARB Case No. 04-043, 2005 WL 1028217, at *3 (Dep't of Labor Apr. 26, 2005) ("To invoke protection under [Section 31105(a)(1)(B)(i)], a complainant must allege and ultimately prove that an actual

11

violation would have occurred.").  By contrast, under Section 31105(a)(1)(B)(ii), the "reasonable apprehension" category, the ARB has said that the refusal is protected if the employee reasonably believed "that operation of the motor vehicle would pose a risk of serious injury to the employee or the public."  Shields, 2009 WL 4324727, at *3.

The statute directs the agency and the courts to implement the "reasonable apprehension" clause in paragraph (1)(B)(ii) under an objective reasonableness test, where the adjudicator determines whether "a reasonable individual in the circumstances then confronting the employee" – not the specific complainant – "would conclude that the hazardous safety or security condition establishes a real danger of accident, injury, or serious impairment to health."  49 U.S.C. § 31105(a)(2).   In addition, to qualify for protection under the "reasonable apprehension" category, the employee must have "sought from the employer, and been unable to obtain, correction of the hazardous safety or security condition." Id.

Notably absent from 49 U.S.C. § 31105(a)(2)'s explanation of "reasonableness" is any reference to Section 31105(a)(1)(B)(i).  Had Congress intended to condition protection for refusal to drive under that clause merely on a *reasonable belief* that there would be a violation of law, rather than on an *actual* violation, Congress presumably would have expressed this standard explicitly.  See

12

Griffith v. United States (In re Griffith), 206 F.3d 1389, 1394 (11th Cir. 2000) (internal quotation omitted) ("[W]here Congress knows how to say something but chooses not to, its silence is controlling.").

The Secretary nevertheless argues that the term "violates" in the statute does not always refer to a genuine, actual violation, because that term is construed differently in the preceding "Complaint" subparagraph. She points out that Section 31105(a)(1)(A) provides that an employer cannot take discriminatory or disciplinary action against an employee where the employee "has filed a complaint or begun a proceeding related to a violation" of a safety or security regulation, standard, or order, or "has testified or will testify in such a proceeding." 49 U.S.C. § 31105(a)(1)(A)(i); see also 49 U.S.C. § 31105(a)(1)(A)(ii) (similar protection for employees perceived to have initiated a complaint).

All parties agree that "violation" as used in the Complaint subparagraph refers to an act reasonably perceived to be a violation. See, e.g., Calhoun v. U.S. Dep't of Labor, 576 F.3d 201, 212 (4th Cir. 2009) (internal quotation omitted) ("To qualify for protection, a complaint must be based on a 'reasonable belief that the company was engaging in a violation of a motor vehicle safety regulation'"); Yellow Freight Sys., Inc. v. Martin, 954 F.2d 353, 357 (6th Cir. 1992); Guay v. Burford's Tree Surgeon's Inc., ARB Case No. 06-131, 2008 WL 2624771, at *4 (June 30, 2008). But it does not follow that the "reasonable belief" or "reasonable

13

perception" standard in the Complaint subparagraph should also apply to Section 31105(a)(1)(B)(i).

Not only is the surrounding language dissimilar – "related to a violation" is different from "operation violates" – but the purposes of the two provisions are distinct. Subparagraph (A) protects employees who file complaints about violations that they observe in their work, whereas subparagraph (B) protects employees who refuse to do tasks that would otherwise fall within the scope of their employment. It is plausible that Congress would elect to provide broader protections for employees who complain about perceived but nonexistent safety violations – as it has, for example, in Title VII and other statutes protecting employees from discrimination in the workplace – and narrower protections for employees whose refusals to drive may significantly impede work operations.[1] Indeed, as the Second Circuit has noted, "protecting trucking firms from unjustified work refusals certainly was clearly of concern to Congress in passing the STAA." Yellow Freight Sys., Inc. v. Reich, 38 F.3d 76, 81 (2d Cir. 1994).

---

[1] The Secretary draws analogies between the STAA and whistleblower provisions in other statutes, which protect employees who file complaints or initiate proceedings based on violations or alleged violations. See, e.g., 49 U.S.C. § 42121 (protecting employees who provide information or participate in proceedings related to violations of the Aviation and Investment Reform Act); 15 U.S.C. § 2622 (protecting employees who participate in proceedings brought under the Toxic Substances Control Act); 42 U.S.C. § 7622 (protecting employees who participate in proceedings related to violations of the Clean Air Act). These statutes, however, like 49 U.S.C. § 31105(a)(1)(A), are triggered when an employee complains about a perceived violation – not when the employee refuses to perform work duties.

14

B.

The statutory history of the whistleblower provision further bolsters Koch Foods' interpretation. When it was enacted in 1983, the whistleblower provision provided, in relevant part:

> No person shall discharge, discipline, or in any manner discriminate against an employee . . . for refusing to operate a vehicle [1] when such operation constitutes a violation of any Federal rules, regulations, standards, or orders applicable to commercial motor vehicle safety or health, or [2] because of the employee's reasonable apprehension of serious injury to himself or the public due to the unsafe condition of such equipment. The unsafe conditions causing the employee's apprehension of injury must be of such nature that a reasonable person, under the circumstances then confronting the employee, would conclude that there is a bona fide danger of an accident, injury, or serious impairment of health, resulting from the unsafe condition. In order to qualify for protection under this subsection, the employee must have sought from his employer, and have been unable to obtain, correction of the unsafe condition.

49 U.S.C. § 2305(b) (1988) (emphasis added).

The ARB interpreted the first sentence in 49 U.S.C. § 2305(b) as permitting refusals to drive either (1) "when" such operation violated or would violate a federal safety law, or (2) "because of" the employee's reasonable apprehension that such operation would be unsafe. See Duff Truck Line, Inc. v. Brock, 848 F.2d 189, 1988 WL 41972, at *2 (6th Cir. 1988) (unpublished table disposition) (upholding Secretary's interpretation that refusal had to meet either condition, not both conditions, for protection). For refusal to be protected under the "when" clause, a complainant had to show a genuine violation. Yellow Freight Sys., Inc.

15

v. Reich, 38 F.3d at 82 (protection under the "when" clause is awarded only "when an actual safety defect is found"); Brame v. Consol. Freightways, 90-STA-20, 1992 WL 752678, at *1 (Dep't of Labor June 17, 1992) (Good faith belief is "insufficient to establish a violation . . . [T]o invoke protection under the first clause of Section 2305(b), a complainant must prove that his assessment of the condition is correct."); Robinson v. Duff Truck Line, Inc., 86-STA-3, 1987 WL 383080, at *4-5 (Dep't of Labor Mar. 6, 1987); but see Yellow Freight System, Inc. v. Martin, 983 F.2d 1195 (2d Cir. 1993) (upholding protection for employee who was mistaken about safety violation but noting that an actual violation generally is required).  Although these decisions did not expressly examine whether the "when" clause was unclear, the Secretary concedes that the "when" clause unambiguously applied only when operation actually would have violated a safety law.

In 1994, Congress amended the statute as part of an overall revision of federal transportation laws.  See Revision of Title 49, United States Code Annotated, "Transportation," Pub. L. No. 103-272, 108 Stat. 745 (1994).  As relevant here, the revised statutory language provided:

> (1) A person may not discharge an employee, or discipline or
> discriminate against an employee regarding pay, terms, or privileges
> of employment, because—
>
>> (A)    the employee . . . has filed a complaint or begun a
>>          proceeding related to a violation of a commercial

16

motor vehicle safety regulation, standard, or order, or has testified or will testify in such a proceeding; or

(B)    the employee refuses to operate a vehicle <u>because</u>—

(i) the operation violates a regulation, standard, or order of the United States related to commercial motor vehicle safety or health; or

(ii) the employee has a reasonable apprehension of serious injury to the employee or the public because of the vehicle's unsafe condition.

\* \* \*

(2) Under paragraph (1)(B)(ii) of this subsection, an employee's apprehension of serious injury is reasonable only if a reasonable individual in the circumstances then confronting the employee would conclude that the unsafe condition establishes a real danger of accident, injury, or serious impairment to health. . . .

<u>Id.</u> at 990; 49 U.S.C. § 31105 (1994) (emphasis added).[2]

During the 1994 revision, the statutory phrase "<u>when</u> such operation constitutes a violation" was replaced with "<u>because</u> . . . the operation violates a regulation, standard, or order." (emphasis added)  The ARB's position is that the 1994 amendment rendered the provision's language unclear.  The Secretary argues

---

[2]  The statute was amended in 2007 to incorporate certain recommendations by the 9/11 Commission.  The 2007 amendments replaced the phrase "unsafe condition" with "hazardous safety or security condition", and created protections for individuals retaliated against because of the employer's belief that the employee had filed a complaint. 49 U.S.C. § 31105 (2008); Pub. L. 110-53, Title XV, § 1536 (Aug. 3, 2007).

that the use of the word "because" in place of the word "when" changed the emphasis to the reason for the employee's refusal to drive, rather than the timing of an actual violation – as the Secretary puts it, Congress "eliminated the temporal element." In the Secretary's view, use of the word "because" signifies that the employee's subjective understanding is sufficient to trigger protection under the statute. Although conceding that the original statute unambiguously required an actual violation, the Secretary argues that the amendment somehow reflects a congressional intention to change this requirement, or at least renders the statute unclear.

This argument fails. As discussed above, we do not read the term "because" to indicate that the employee's subjective belief is sufficient to trigger protection under the Act. Nor did Congress intend such a result, as evidenced by its use of the word "because" elsewhere in Section 31105. The current version of Section 31105(a)(1)(A), the "Complaint" subparagraph, prohibits an employer from retaliating against an employee "because" (i) the employee has filed a complaint or participated in a proceeding or (ii) the employer perceives that the employee has filed or will file a complaint, or has participated or will participate in a proceeding. 49 U.S.C. § 31105(a)(1)(A). If the word "because" signifies that only the employer's subjective belief is relevant, then subparagraph (A)(ii)'s protections for an employee whom the employer erroneously believes to have filed a complaint

18

would be redundant.  And directly relevant here, if the word "because" sufficed to communicate a subjective belief standard, it would have been unnecessary to include the "reasonable apprehension" language in Section 31105(a)(1)(B)(ii).  See 49 U.S.C. § 31105(a)(1)(B)(ii) (protecting an employee who "refuses to operate a vehicle because . . . the employee has a reasonable apprehension ").  "[C]ourts should disfavor interpretations of statutes that render language superfluous." Griffith, 206 F.3d at 1393 (citing Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253 (1992)).

Moreover, the 1994 Consolidation Act expressly states that no substantive change is intended by the revisions to the language.  Section 1(a) of that Act provides that "[c]ertain general and permanent laws of the United States, related to transportation, are revised, codified, and enacted by subsections (c)–(e) of this section without substantive change as subtitles II, III, and V–X of title 49, United States Code, 'Transportation.'"  Revision of Title 49, United States Code Annotated, "Transportation," 108 Stat. at 745 (emphasis added).[3]  The title of the Act similarly provides that it is intended "to codify, and enact without substantive change" existing provisions of title 49.  Id. at 745; see Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008) (internal quotation omitted) (observing that although titles and section headings "cannot substitute for the

---

[3] The revisions to Section 31105, which fall within subtitle VI of title 49, are located in subsection (e) of the 1994 Act.

operative text of the statute," they "are tools available for the resolution of a doubt about the meaning of a statute").  The House and Senate Reports accompanying those amendments repeat that the revisions were not intended to be substantive. See H.R. Rep. No. 103-180, at 5 (1994), reprinted in 1994 U.S.C.C.A.N. 818, 822 ("As in other codification bills enacting titles of the United States Code into positive law, this bill makes no substantive change in the law. . . . In a codification law . . . the law is intended to remain substantively unchanged."); S. Rep. No. 103-265, at 5 (1994) (same).

These statements align with the principle that, while changes in statutory language often indicate legislative intent to change a statute's meaning, such an inference is inapplicable to consolidations and recodifications of laws.  As the Supreme Court has observed, "it will not be inferred that Congress, in revising and consolidating the laws, intended to change their effect unless such intention is clearly expressed.'"  Finley v. United States, 490 U.S. 545, 554 (1989) (quoting Anderson v. Pac. Coast S.S. Co., 225 U.S. 187, 199 (1912)).

## IV.    CONCLUSION

Upon review of the statute's plain language, structure, and statutory history, we conclude that Section 31105(a)(1)(B)(i) unambiguously covers only those situations where the record shows that operation of a motor vehicle would result in the violation of a regulation, standard, or order related to commercial motor

20

vehicle safety, health, or security. We therefore grant Koch Foods' petition and remand this case to the ARB for proceedings consistent with this opinion.[4]

PETITION FOR REVIEW GRANTED; VACATED AND REMANDED.

---

[4] Because the case is vacated and remanded, the court need not determine whether the determination of backpay and compensatory damages is supported by substantial evidence.

21