**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CURTIS ROOKAIRD,<br>*Plaintiff-Appellee*,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation,<br>*Defendant-Appellant.* | Nos. 16-35786<br>16-35931<br>16-36062<br><br>D.C. No.<br>2:14-cv-00176-<br>RSL |

| | |
|---|---|
| CURTIS ROOKAIRD,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>BNSF RAILWAY COMPANY, a<br>Delaware corporation,<br>*Defendant-Appellee.* | No. 16-35787<br><br>D.C. No.<br>2:14-cv-00176-<br>RSL<br><br><br>OPINION |

Appeal from the United States District Court
for the Western District of Washington
Robert S. Lasnik, Senior District Judge, Presiding

Argued and Submitted May 11, 2018
Seattle, Washington

Filed November 8, 2018

Before:  Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and John R. Tunheim,[*] Chief District Judge.

Opinion by Judge Tunheim;
Partial Dissent by Judge Ikuta

---

## SUMMARY[**]

### Federal Railroad Safety Act

The panel affirmed in part, reversed in part, and vacated
the district court's judgment, after a jury trial, in favor of the
plaintiff on a claim that BNSF Railway Co. violated the anti-
retaliation provision of the Federal Railroad Safety Act when
it fired the plaintiff for, in part, refusing to stop performing
an air-brake test on a train that he was tasked with moving.

The panel affirmed the district court's denial of BNSF's
motion for judgment as a matter of law with respect to
whether the plaintiff engaged in FRSA protected activity.
The panel concluded that there was sufficient evidence to
support the jury's finding that the plaintiff refused, in good
faith, to violate a railroad safety rule or regulation. The panel
held that no actual violation of a rule or regulation was
required, and substantial evidence supported the jury's

---

[*] The Honorable John R. Tunheim, Chief United States District
Judge for the District of Minnesota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It
has been prepared by court staff for the convenience of the reader.

finding that it was objectively reasonable for the plaintiff to believe that the air-brake test was required.

The panel reversed the district court's grant of summary judgment to the plaintiff on the contributing-factor element of his FRSA retaliation claim. The panel concluded that the plaintiff made a prima facie showing, but his substantive case should have gone to the jury because there remained a genuine dispute of material fact as to whether the air-brake test was a contributing factor in his termination.

The panel vacated the district court's judgment and remanded for further proceedings. It dismissed as moot the plaintiff's cross-appeal related to damages.

Dissenting from Part II.A of the majority opinion, Judge Ikuta wrote that the applicable provision of FRSA protects an employee who refuses to violate federal law; it does not protect an employee who refuses to take an act the employee merely thinks violates federal law.

## COUNSEL

Jacqueline M. Holmes (argued), Jones Day, Washington, D.C., for Defendant-Appellant/Cross-Appellee.

Christopher William Bowman (argued), William G. Jungbauer, Yaeger & Jungbauer Barristers PLC, Saint Paul, Minnesota, for Plaintiff-Appellee/Cross-Appellant.

Nichols D. Thompson, Nichols Kaster PLLP, Minneapolis, Minnesota; Lawrence M. Mann, Bethesda, Maryland; for Amicus Curiae Academy of Rail Labor Attorneys.

## OPINION

TUNHEIM, Chief District Judge:

These appeals follow a civil jury trial. The jury found that BNSF Railway Company violated the anti-retaliation provision of the Federal Railroad Safety Act ("FRSA") when BNSF fired Curtis Rookaird for, in part, refusing to stop performing an air-brake test on a 42-car train that he was tasked with moving. Rookaird was awarded over $1.2 million in damages. BNSF appeals issues related to its liability and damages; Rookaird cross-appeals issues related to damages. For the reasons below, we affirm in part, reverse in part, vacate the district court's judgment, and remand.

## I. Background

### A. Factual Background

BNSF operates a freight railroad in the western United States and Canada. It serves customers across North America, including northwest Washington known as Cherry Point. The Cherry Point rail line connects to a main line that runs from Bellingham to BNSF's Swift Depot. BNSF employs three-person "switcher" crews that serve BNSF customers in Cherry Point by switching or reassigning freight cars as part of delivering or picking up freight. In early 2010, BNSF relocated its switcher crews from Bellingham to the Swift Depot to reduce travel time to Cherry Point, thereby reducing the overtime BNSF had to pay those crews.

Curtis Rookaird was a conductor for – and thus in charge of – one such crew. On February 23, 2010, Rookaird and his crew worked a scheduled eight-hour shift beginning at

2:30 p.m. The "Trainmaster," Dan Fortt, tasked Rookaird's crew with moving a 42-car train in Custer from the main line to a different set of tracks before traveling to Cherry Point to service BNSF's customers.

Three hours into their shift, the crew arrived in Custer after securing two engines in Ferndale (south of Custer). Before moving the 42-car train, Rookaird's crew performed a 20- to 45-minute air-brake test on the train. During the test, Fortt said on the radio to Rookaird and his crew, "I'm not from around here, and I don't know how you guys do anything. But from where I'm from, we don't have to air test the cars." Fortt did not tell the crew to stop. Rookaird's crew replied that they were going to finish the test. They did, and then began moving the 42-car train.

About ninety minutes later, around five hours into their shift, Rookaird's crew had not yet completed moving the 42-car train in Custer and had not yet serviced any Cherry Point customers. Fortt and Stuart Gordon, another one of Rookaird's supervisors on duty that day, were frustrated with what they believed to be a slow pace of work by Rookaird's crew. Fortt ordered Rookaird's crew to stop work and report back to the Swift Depot because another crew was going to relieve them. Gordon believed that Rookaird was intentionally slowing down work as a way to get back at BNSF for reducing overtime hours.

Back at the Swift Depot, around 7:50 p.m., Gordon questioned Rookaird about the air-brake test. Gordon told Rookaird that he thought the test was unnecessary. Gordon also asked Rookaird if he would be happy with the level of service he received that day if he were a BNSF customer; Rookaird told him no. Gordon then told Rookaird and his crew that they were done for the day and to clock out and go home. Rookaird printed his timesheet at 8:02 p.m., reporting

his off-duty time at 8:30 p.m.  Around 8:15 p.m., Gordon again told Rookaird to go home; he did, but he did not sign his timesheet before leaving.

BNSF initiated an investigation into Rookaird to determine whether any disciplinary action was warranted. On March 19, BNSF fired Rookaird for his "failure to work efficiently . . . on February 23," his "dishonesty when reporting [his] off duty time," his failure to sign his timesheet, and his "failure to comply with instructions when instructed to leave the property . . . on February 23."

## B.  The FRSA

The FRSA prohibits railroad operators from retaliating against employees who refuse in good faith to violate railroad safety laws or regulations.  The FRSA provides:

> A railroad carrier . . . may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith . . . refus[al] to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety . . . .

49 U.S.C. § 20109(a), (a)(2).

An employee who alleges an FRSA anti-retaliation violation may file a complaint with the Secretary of Labor. *Id.* § 20109(d)(1).  If the Secretary fails to issue a final decision within 210 days, the employee may bring a civil action in federal court.  *Id.* § 20109(d)(3).

An FRSA retaliation complaint proceeds in two stages, each of which is governed by a burden-shifting framework. First, the complainant must "make[ ] a prima facie showing that" protected activity "was a contributing factor in the unfavorable personnel action." 49 U.S.C. § 42121(b)(2)(B)(i). If the complainant makes a prima facie showing, the burden shifts to the employer to prove "by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of" the protected activity. *Id.* § 42121(b)(2)(B)(ii). Then, to substantively establish an FRSA violation, the complainant must prove by a preponderance of the evidence "that any [protected activity] was a contributing factor in the unfavorable personnel action alleged in the complaint." 49 U.S.C. § 42121(b)(2)(B)(iii); *see* 29 C.F.R. § 1982.109(a). If the complainant proves the substantive case, then the burden again shifts to the employer to prove "by clear and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]." 49 U.S.C. § 42121(b)(2)(B)(iv).

## C.  District Court Proceedings

Rookaird brought this action pursuant to 49 U.S.C. § 20109(d)(3). Rookaird alleged that BNSF violated the anti-retaliation provision of the FRSA because BNSF fired him for, in part, refusing to stop performing the air-brake test. BNSF insisted that it did not fire him for that reason. BNSF also asserted its affirmative defense under 49 U.S.C. § 42121(b)(2)(B)(iv) that it would have fired Rookaird even if he had not performed the air-brake test.

The district court held that Rookaird was required to prove four elements by a preponderance of the evidence: "that (1) he engaged in a protected activity; (2) the employer

knew he engaged in the allegedly protected activity; (3) he suffered an unfavorable personnel action; and (4) the protected activity was a contributing factor in the unfavorable personnel action." The district court granted Rookaird summary judgment on all but the first element of his substantive case. The district court held that BNSF knew that Rookaird performed the air-brake test, that his termination was an adverse action, and that the air-brake test was a contributing factor in his firing. With respect to the contributing-factor element, the district court found that the "cited failure to work efficiently cannot be unwound from Rookaird's decision" to perform the air-brake test.

The issues for the jury were whether Rookaird's refusal to stop the air-brake test was FRSA-protected activity, BNSF's affirmative defense, and damages. Before closing arguments, the district court concluded that – although Rookaird's crew was not legally required to perform the air-brake test under the circumstances, describing the issue as a "close call" – a reasonable jury could find that Rookaird engaged in protected activity because there was evidence that Rookaird "had a subjectively and objectively reasonable good faith belief that the air-brake test was required."[1] The jury returned a verdict for Rookaird, finding that Rookaird's refusal was FRSA-protected activity. The Court awarded Rookaird $1.2 million in damages and entered final judgment.

These appeals followed.

---

[1] The district court treated the propriety of the air-brake test as an issue for the court to resolve, not the jury. We express no view either on the air-brake test's propriety or on whether that question should have been decided by the jury rather than the court.

## II.  Discussion

### A.  Protected Activity

BNSF appeals the district court's denial of BNSF's motion for judgment as a matter of law that Rookaird did not engage in protected activity.  We review de novo a district court's denial of a motion for judgment as a matter of law. *First Nat'l Mortg. Co. v. Fed. Realty Inv. Tr.*, 631 F.3d 1058, 1067 (9th Cir. 2011).  Judgment as a matter of law is proper only when "the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Josephs v. Pac. Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006).  "The verdict will be upheld if it is supported by substantial evidence, 'even if it is also possible to draw a contrary conclusion.'" *First Nat'l Mortg. Co.*, 631 F.3d at 1067 (quoting *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002)).

BNSF argues that Rookaird did not engage in protected activity as a matter of law for two reasons.  First, BNSF insists there was insufficient evidence from which the jury could have found that Rookaird "refused" to violate a railroad safety rule or regulation because he was never explicitly ordered to stop the air-brake test.  Second, BNSF argues that 49 U.S.C. § 20109(a)(2) protects only refusals to engage in conduct that would be an *actual* violation of railroad rules or regulations, and thus that Rookaird did not engage in protected activity because the air-brake test was not legally required.

We hold that the district court did not err in denying BNSF's motion for judgment as a matter of law with respect to whether Rookaird engaged in FRSA-protected activity.

### 1. Refusal

Under the FRSA, protected activity includes an "employee's lawful, good faith . . . refus[al] to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security."     49 U.S.C. § 20109(a), (a)(2).  By the FRSA's plain terms, an employee must "refuse" to violate a rule or regulation, necessarily requiring some action by the employer (e.g., an order to perform or not perform, or to start or stop, a particular action) which prompts the employee's "refusal."  *See Refuse*, Merriam-Webster's Collegiate Dictionary (10th ed. 2001) ("to show or express unwillingness to do or comply with"); *cf. Quinn v. United States*, 349 U.S. 155, 165–66 (1955) (holding that, to sustain a conviction under 2 U.S.C. § 192 for refusing to answer questions before Congress, a witness must be "clearly apprised that the committee demands his answer notwithstanding his objections").  Thus, an employee who simply performs basic job duties has not "refused" to violate any rule or regulation unless those job duties are covered by a rule or regulation.  *See Sievers v. Alaska Airlines, Inc.*, ARB No. 05-109, 2008 WL 316012, at *3–4 (Jan. 30, 2008).

BNSF maintains that Fortt's questioning of the air-brake test's necessity constituted insufficient evidence that Rookaird 'refused' to violate a railroad safety rule or regulation because it is undisputed that Fortt never explicitly directed Rookaird to stop the test.  But an employee's refusal need not be precipitated by an explicit directive in order for the employee's refusal to be FRSA-protected activity.  The word "refuse" in the FRSA is a clear reference to the employee's conduct, not the employer's.   And while certainly an explicit order can be 'refused,' statements or conduct of the employer can amount to an implicit order, and

an employee can refuse to follow that implicit order just as much as an explicit one. *See Douds v. Milk Drivers & Dairy Emp. Local No. 680*, 133 F. Supp. 336, 340 (D.N.J. 1955) ("On the other hand, 'refusal' connotes an intentional unwillingness on the part of the employee to do what he is asked to do.  This asking may be by an explicit direct order, but since 'actions speak louder than words' . . . , no particular form of words is essential.")

Here, there was sufficient evidence to support the jury's finding that Rookaird refused, in good faith, to violate a railroad safety rule or regulation.  Fortt's statements questioning the need for the air-brake test came in the middle of the test.  Rookaird responded that the crew was going to finish the test, and they did so.  Fortt was Rookaird's supervisor.  And the substance of Fortt's statements – "I'm not from around here," "I don't know how you guys do anything," and "from where I'm from, we don't have to air test the cars" – are exactly the kind of statements, taken in context, that a reasonable jury could have found sufficient to prompt Rookaird to 'refuse' to stop the test.

## 2.  Actual Violation

The parties vigorously disputed before the district court whether Rookaird was legally required to perform the air-brake test under the circumstances.  The district court ultimately concluded that he was not but described the issue as a "close call."  The district court went on to hold that the good-faith requirement in subsection (a) of 49 U.S.C. § 20109 required Rookaird to prove that he "must have had a subjectively and objectively reasonable good faith belief that the air-brake test was required by federal law or regulation." The district court also held that substantial evidence supported the jury's finding that it was objectively

reasonable for Rookaird to believe that the air-brake test was required.

On appeal, BNSF argues as a matter of statutory interpretation that paragraph (a)(2) of 49 U.S.C. § 20109 applies only to conduct that, if undertaken, would *actually* violate a rule or regulation, and therefore that Rookaird did not engage in protected activity because the test was not legally required. BNSF effectively asks us to add the word "actually" before "violate" in paragraph (a)(2).

We reject this interpretation of 49 U.S.C. § 20109(a)(2) as incorrectly narrowing its intended scope. To constructively add the word "actually" into paragraph (a)(2) would undercut the good-faith requirement that applies throughout subsection (a). Congress's use of the phrase "good faith" in subsection (a) means that it intended for paragraph (a)(2) to extend to an employee's good-faith refusal to undertake conduct the employee believed to be violative of a law, rule, or regulation, even if the conduct at issue would not constitute an actual violation of a law, rule, or regulation if performed or continued. *See Good Faith*, Black's Law Dictionary (10th ed. 2014) ("A state of mind consisting in (1) honesty in belief or purpose, [or] (2) faithfulness to one's duty or obligation.").

Rookaird's case presents a good example of why this interpretation must be correct. The jury found that Rookaird had a good-faith belief that the air-brake test was required; there was disagreement between Rookaird and his supervisors as to the test's propriety; the issue was hotly contested through trial; and the district court only resolved the issue after acknowledging that it was a "close call." We think Congress intended for Rookaird's good-faith refusal to be within the scope of paragraph (a)(2), notwithstanding that the air-brake test turned out to be legally unnecessary.

By contrast, limiting paragraph (a)(2) to actual violations would allow railroads to avoid liability for conduct clearly intended be covered by paragraph (a)(2).  For example, if a railroad supervisor nefariously orders an employee to perform an act that the supervisor is sure would violate federal law, and the employee believes – like the  supervisor – that following the order would require the employee to violate federal law, the railroad could fire the employee for insubordination if the employee refused in good faith to follow that order if it turns out that both the supervisor and the employee were mistaken.  This creates a situation in which, because of a nuanced technicality that neither the supervisor nor the employee knew of, the employee's noncompliance with the supervisor's order would not have been an actual violation of federal law.  If paragraph (a)(2) were construed to cover only actual violations, this hypothetical employee would have no recourse under paragraph (a)(2).  We cannot imagine that Congress intended for railroads to escape FRSA liability in such a situation.**[2]**

Lower courts' interpretations of a different paragraph of subsection (a) support our conclusion.  Courts interpreting paragraph (a)(4) of § 20109 – which prohibits retaliation

---

**[2]** The dissent argues that this situation is already accounted for by the text of the statute.  Under the dissent's reading of the statute, the employee has recourse in such a situation because the act that the employee undertook was "perceived by the employer" to be a refusal to violate federal law.  But this view misreads the statute.  49 U.S.C. § 20109(a) refers to the employee's "lawful, good faith act done, or perceived by the employer to have been done or about to be done."  The phrase "perceived by the employer" gives an employee recourse whether the employee actually engaged in the act or whether the employer merely believes the employee engaged in the act.  The phrase "perceived by the employer" does not refer to the employer's belief about the propriety of the employee's act.

against employees who "notify . . . the railroad carrier . . . of a work-related personal injury" – have refused to construe paragraph (a)(4) to require that the reported injury *actually* be work-related. *See Thomas v. Union Pac. R.R. Co.*, 203 F. Supp. 3d 1111, 1117–18 (D. Or. 2016); *Cash v. Norfolk S. Ry. Co.*, No. 6:13-CV-00056, 2015 WL 178065, at *11 (W.D. Va. Jan. 14, 2015); *Koziara v. BNSF Ry. Co.*, No. 13-CV-834-JDP, 2015 WL 137272, at *6 (W.D. Wis. Jan. 9, 2015); *Davis v. Union Pac. R.R. Co.*, No. 5:12-CV-2738, 2014 WL 3499228, at *6–7 (W.D. La. July 14, 2014); *Ray v. Union Pac. R.R. Co.*, 971 F. Supp. 2d 869, 882–84 (S.D. Iowa 2013). Rather, those courts require only that the employee have had, at the time of notification, a good-faith belief that the injury was work-related: the complainant must show that "he subjectively believed his reported injury was work-related;" and that "his belief was objectively reasonable." *Koziara*, 2015 WL 137272, at *6. If the employee turns out to have been mistaken (i.e., the injury was not actually work-related), the railroad can still be liable under paragraph (a)(4), provided that the employee's notification was done in good faith. *See id.* These courts' refusals to add an actuality requirement to paragraph (a)(4) in light of subsection (a)'s good-faith requirement support our conclusion that paragraph (a)(2) should similarly not be limited.

We are unpersuaded that the presence of the phrase "reasonably believes" in paragraph (a)(1) and the absence of that phrase in paragraph (a)(2) – through application of the canon of *expressio unius est exclusio alterius* – require that paragraph (a)(2) be limited to apply only to actual violations.[3] As the Supreme Court has "held repeatedly,"

---

[3] Contrary to BNSF's suggestions, we do not think the district court imported the "reasonably believes" language from paragraph (a)(1) into

the *expressio unius* canon "has force only when [listed] items . . . are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003) (quoting *United States v. Vonn*, 535 U.S. 55, 65 (2002)); *see Plata v. Schwarzenegger*, 603 F.3d 1088, 1095 (9th Cir. 2010). The phrase "reasonably believes" in paragraph (a)(1) is not part of an associated group or series, or a statutory listing or grouping, and so we cannot conclude that its omission from paragraph (a)(2) was Congress's deliberate choice.

And even were the canon to apply, the language of paragraph (a)(7) weighs against adding an actual-violation requirement into paragraph (a)(2). Paragraph (a)(7) protects employees who, in good faith, "*accurately* report hours on duty." 49 U.S.C. § 20109(a)(7) (emphasis added). Presumably then, paragraph (a)(7) does not protect employees who *inaccurately* report hours on duty, even if such a report is made in good faith. That Congress used the word "accurately" in paragraph (a)(7) – thereby imposing an additional, accurateness requirement on top of the good-faith requirement – suggests that Congress did not intend to add an actual-violation requirement into paragraph (a)(2).

We are similarly unpersuaded by BNSF's reference to the Eleventh Circuit's decision in *Koch Foods, Inc. v. Secretary, U.S. Department of Labor*, 712 F.3d 476 (11th Cir. 2013), which interpreted an anti-retaliation provision of the Surface Transportation Assistance Act ("STAA"). The STAA prohibits employers from retaliating against an

---

paragraph (a)(2); rather, the district court's subjective-objective instruction to the jury was about the good-faith requirement of subsection (a).

employee who "refuses to operate a vehicle because . . . the operation violates a regulation . . . related to commercial motor vehicle safety." 49 U.S.C. § 31105(a)(1)(B)(i). *Koch* held that 49 U.S.C. § 31105(a)(1)(B)(i) requires "that an actual violation . . . must occur as a result of the operation of the vehicle." 712 F.3d at 481. But the STAA's anti-retaliation provision lacks the "good faith" requirement present in § 20109(a)(2). Indeed, *Koch* relied on the fact that the relevant portion of the STAA was "unadorned by any reference to the employee's belief." 712 F.3d at 481.[4]

We affirm the district court's denial of BNSF's motion for judgment as a matter of law on the protected-activity element of Rookaird's claim.

## B. Contributing Factor

BNSF also appeals the district court's grant of summary judgment to Rookaird on the contributing-factor element of his FRSA retaliation claim. We review de novo a district court's grant of summary judgment. *S & H Packing & Sales Co. v. Tanimura Distrib., Inc.*, 883 F.3d 797, 801 (9th Cir. 2018). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inference in the nonmoving party's favor. *Easley v. City of Riverside*, 890 F.3d 851, 856 (9th Cir. 2018). "Where the

---

[4] To be clear, we do not hold that whether an actual violation would have occurred is irrelevant to a railroad's liability under § 20109(a)(2). Such evidence might be probative of the employee's good faith but could also be unfairly prejudicial or overly confusing. *See* Fed. R. Evid. 401–403. We leave it to district courts to decide such evidentiary questions in the ordinary course of trial and pretrial proceedings.

moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

BNSF argues that the district court erred in granting Rookaird summary judgment. We generally agree. The district court conflated Rookaird's prima facie showing, which he successfully made as a matter of law, with his substantive case, which should have gone to the jury. Accordingly, we reverse the district court's grant of summary judgment to Rookaird on the contributing-factor issue.

### 1. The FRSA

We begin by clarifying the structure of the relevant portion of the FRSA. A claim for unlawful retaliation under the FRSA has two stages: the prima facie stage, *see* 49 U.S.C. § 42121(b)(2)(B)(i)–(ii); 29 C.F.R. § 1982.104(e), and the substantive stage, *see* 49 U.S.C. § 42121(b)(2)(B)(iii)–(iv); 29 C.F.R. § 1982.109(a)–(b). Each stage has its own burden-shifting framework.

At the prima facie stage, a complainant must make "a prima facie showing that any [protected activity] was a contributing factor in the unfavorable personnel action alleged in the complaint." 49 U.S.C. § 42121(b)(2)(B)(i). A complainant's prima facie showing has four elements:

> [1] The employee engaged in a protected activity (or . . . was perceived to have engaged or to be about to engage in protected activity);

[2] The respondent knew or suspected that the employee engaged in the protected activity (or . . . perceived the employee to have engaged or to be about to engage in protected activity);

[3] The employee suffered an adverse action; and

[4] The circumstances *were sufficient to raise the inference that* the protected activity (or perception thereof) was a contributing factor in the adverse action.

29 C.F.R. § 1982.104(e)(2) (emphasis added). "Notwithstanding a finding . . . that the complainant has made [a prima facie] showing," the employer can defeat a claim "if the employer demonstrates, by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]." 49 U.S.C. § 42121(b)(2)(B)(ii); *see* 29 C.F.R. § 1982.104(e)(4). In administrative proceedings, if an FRSA complainant prevails at the prima facie stage, then OSHA will investigate the claim. 49 U.S.C. § 42121(b)(2)(A); 29 C.F.R. § 1982.104(e)(5).

At the substantive stage, a violation will be found "only if the complainant demonstrates that any [protected activity] *was* a contributing factor in the unfavorable personnel action alleged in the complaint." 49 U.S.C. § 42121(b)(2)(B)(iii) (emphasis added); *see* 29 C.F.R. § 1982.109(a). The complainant must prove the substantive case by a preponderance of the evidence. 29 C.F.R. § 1982.109(a). Then – like at the prima facie stage – the employer can defeat the retaliation claim "if the employer demonstrates by clear

and convincing evidence that the employer would have taken the same unfavorable personnel action in the absence of [the protected activity]." 49 U.S.C. § 42121(b)(2)(B)(iv); *see* 29 C.F.R. § 1982.109(b).

These two stages are distinct. The prima facie stage is governed by clauses (i) and (ii) of 49 U.S.C. § 42121(b)(2)(B) and by 29 C.F.R. § 1982.104; the substantive stage is governed by clauses (iii) and (iv) of 49 U.S.C. § 42121(b)(2)(B) and by 29 C.F.R. §§ 1982.109, 1982.110. Although the employer has the same burden in each stage, the complainant does not. At the prima facie stage, the complainant need only make a prima facie showing that the protected activity was a contributing factor in the unfavorable personnel action, which includes as an element that "[t]he circumstances *were sufficient to raise the inference that* the protected activity (or perception thereof) was a contributing factor in the adverse action." 29 C.F.R. § 1982.104(e)(2)(iv) (emphasis added). But at the substantive stage, the complainant must prove by a preponderance of the evidence that the protected activity "*was* a contributing factor" in the adverse action. 49 U.S.C. § 42121(b)(2)(B)(iii) (emphasis added); *see* 29 C.F.R. § 1982.109(a). Showing that the circumstances are sufficient to raise the inference of $x$ is a lower bar than proving $x$ by a preponderance of the evidence.

We are not the first to point this out. In 2006, the Administrative Review Board of the Department of Labor similarly explained the structure of the FRSA. In *Brune v. Horizon Air Industries, Inc.*, ARB No. 04-037, 2006 WL 282113, at *7 (Jan. 31, 2006), the Board discussed clauses (i) through (iv) of 49 U.S.C. § 42121(b)(2)(B). The Board explained that clauses (i) and (ii) govern the "investigation" stage (what we call the prima facie stage) and that clauses

(iii) and (iv) govern the "hearing" or "adjudication" stage (what we call the substantive stage). *Id.* at \*7–8. The Board in *Brune* correctly noted the differing standards at each stage:

> The distinction, then, between standards applied for purposes of investigation and adjudication of a complaint concerns the complainant's burden. To secure an investigation, a complainant merely must raise an inference of unlawful discrimination, *i.e.*, establish a prima facie case. To prevail in an adjudication, a complainant must prove unlawful discrimination.

*Id.* at \*8.

### 2. Summary Judgment of Contributing Factor

The district court erred by conflating the two stages through which an FRSA retaliation claim proceeds, i.e., Rookaird's prima facie showing with his substantive case. In its summary-judgment order, the district court found that Rookaird's alleged inefficiency "cannot be unwound from" his decision to perform the air-brake test and therefore granted Rookaird summary judgment on "the 'contributing factor' element of his prima facie case."**[5]** At trial, however, the district court instructed the jury that the contributing-

---

**[5]** In its summary-judgment order, the district court referenced clauses (i) and (ii) of 49 U.S.C. § 42121(b)(2)(B), but those clauses govern only the prima facie stage; clauses (iii) and (iv) govern the substantive stage. Similarly, to the extent that the district court relied on *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786 (8th Cir. 2014), that reliance was misplaced because *Kuduk* involved the prima facie stage; *Kuduk* did not involve the substantive stage. *Id.* at 789–90.

factor element was not in dispute, and that to prevail on the merits, Rookaird only needed to prove that his refusal to stop the air-brake test constituted FRSA-protected activity. Thus, although the district court's summary-judgment order purported to rule only on an element of Rookaird's prima facie showing, the order's effect was to grant Rookaird summary judgment on an element of his substantive case. This was improper. As explained, a complainant's burden is lower at the prima facie stage than at the substantive stage. A complainant who prevails at the prima facie stage likely can avoid the employer's summary-judgment motion because a prima facie showing includes evidence that "the circumstances were sufficient to raise the inference that the protected activity . . . was a contributing factor," 29 C.F.R. § 1982.104(e)(2)(iv), and reasonable inferences would be drawn in the employee's favor on an employer's motion for summary judgment, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253–54 (1986). But a successful prima facie showing does not entitle a complainant to summary judgment on the substantive case.

Because the district court improperly conflated Rookaird's prima facie showing with his substantive case, we must determine whether Rookaird was entitled to summary judgment on the contributing-factor element of his prima facie showing and, if so, whether he was entitled to summary judgment on his substantive case also.

"A 'contributing factor' includes 'any factor, which alone or in connection with other factors, tends to affect in any way the outcome of the decision.'" *Gunderson v. BNSF Ry. Co.*, 850 F.3d 962, 969 (8th Cir. 2017) (quoting *Kuduk v. BNSF Ry. Co.*, 768 F.3d 786, 791 (8th Cir. 2014)); *Allen v. Admin. Review Bd.*, 514 F.3d 468, 476 n.3 (5th Cir. 2008). "[T]he contributing factor that an employee must prove is

intentional retaliation prompted by the employee engaging in protected activity." *Kuduk*, 768 F.3d at 791. The employee's prima facie showing "does not require that the employee conclusively demonstrate the employer's retaliatory motive." *Coppinger-Martin v. Solis*, 627 F.3d 745, 750 (9th Cir. 2010); *see also Armstrong v. BNSF Ry. Co.*, 880 F.3d 377, 382 (7th Cir. 2018).

We hold that Rookaird was entitled to summary judgment on the contributing-factor element of his prima facie showing, but that he was not entitled to summary judgment on his substantive case.[6]

### a. Rookaird's Prima Facie Showing

As to Rookaird's prima facie showing, there was no genuine dispute of material fact that the circumstances were sufficient to raise the inference that the air-brake test was a contributing factor in Rookaird's termination. *See* 29 C.F.R. § 1982.104(e)(2)(iv). Rookaird was fired in part for being inefficient – for taking too long, in BNSF's view, to complete his assigned tasks during his shift. Rookaird performed what BNSF believed to be an unnecessary air-brake test on that very shift. Fortt questioned the air-brake test's necessity in the middle of it, Rookaird's crew said they were going to finish it, Rookaird was relieved from duty

---

[6] Given our clarification of the differences between the prima facie stage and the substantive stage of an FRSA retaliation claim, it is unclear what the benefit will be for future plaintiffs in obtaining summary judgment of a prima facie showing, given that plaintiffs must still prove their substantive case at trial by a preponderance of the evidence. Nevertheless, Rookaird moved for summary judgment on his prima facie showing, and the district court's decision on that motion is properly before us.

shortly after performing the test, and Gordon questioned him about the test back at the Swift Depot. The close temporal proximity of the crew being relieved to the air-brake test and the crew's post-relief questioning by Gordon about the test further supports the inference that Rookaird's firing was motivated in part by his refusal to stop the air-brake test. 29 C.F.R. § 1982.104(e)(3). Rookaird successfully made his prima facie showing notwithstanding BNSF's evidence to the contrary.[7]

### b. Rookaird's Substantive Case

As to Rookaird's substantive case, however, there remained a genuine dispute of material fact as to whether the air-brake test was a contributing factor in Rookaird's termination. *See* 49 U.S.C. § 42121(b)(2)(B)(iii); 29 C.F.R. § 1982.109(a). BNSF presented evidence that, if credited, could lead a reasonable jury to find that Rookaird's refusal to stop the air-brake test did not contribute to BNSF's decision to terminate him. For example, Fortt and Gordon each testified that the air-brake test did not factor into the decision to fire Rookaird. Doug Jones, the general manager of BNSF's Northwest Division who made the decision to fire Rookaird, also testified that the air-brake test did not factor into his decision. BNSF also presented evidence that Rookaird was fired for reasons unrelated to the air-brake test,

---

[7] In deciding Rookaird's motion for summary judgment, it is unclear whether the district court considered BNSF's evidence, including its purportedly nonretaliatory reasons for Rookaird's termination. Generally, an employer's evidence and nonretaliatory reasons should be considered in evaluating whether an FRSA complainant has made a prima facie showing. *See Koziara v. BNSF Ry. Co.*, 840 F.3d 873, 879 (7th Cir. 2016) (considering employer's evidence), *cert. denied*, 137 S. Ct. 1449 (2017); *Kuduk*, 768 F.3d at 790 (same); *Powers v. Union Pac. R.R. Co.*, ARB No. 13-034, 2017 WL 262014, at *8–10 (Jan. 6, 2017).

including his failure to provide a signed time slip, his refusal to leave BNSF property when instructed, and his inaccurate reporting of his off-duty time.  Viewing that evidence in the light most favorable to BNSF, a reasonable jury could find that Rookaird's refusal to stop the air-brake test did not contribute to BNSF's decision to terminate him.  Rookaird was therefore not entitled to summary judgment on his substantive case.  The jury should have determined whether Rookaird proved by a preponderance of the evidence that his refusal to stop performing the air-brake test was a contributing factor in his termination.  And because no other theory of liability can independently support the verdict, the district court's judgment must be vacated.  *See Traver v. Meshriy*, 627 F.2d 934, 938 (9th Cir. 1980).[8]

### III.  Conclusion

We affirm the district court's denial of judgment as a matter of law to BNSF on the protected-activity issue.  We reverse the district court's grant of summary judgment to Rookaird on the contributing-factor issue.  Accordingly, we vacate the district court's judgment and remand for further proceedings consistent with this opinion.  Because Rookaird's cross-appeal relates entirely to damages, Rookaird's cross-appeal is dismissed as moot.  *See McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1041 (9th Cir. 2015).

---

[8] BNSF argues that it is entitled to a new trial on all issues.  We express no view on whether the improper grant of summary judgment to Rookaird on his substantive case justifies a new trial on other issues, such as BNSF's affirmative defense or damages.  We leave it to the district court on remand to decide whether a new trial on other issues is warranted in light of our decision.

Each party shall bear its own costs.

**AFFIRMED in part, REVERSED in part, VACATED, and REMANDED.  Plaintiff-Appellant Curtis Rookaird's cross-appeal is DISMISSED as moot.**

---

IKUTA, Circuit Judge, dissenting in part:

Once again, our court tries to give Congress a helping hand by substituting its own policy judgment for the plain language of a statute.  According to the majority, Congress's decision to put a "reasonable belief" element into one subsection of a statute and not into another subsection was a mere scrivener's error that we can and should fix judicially.  "But policy arguments cannot supersede the clear statutory text." *Universal Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2002 (2016).  Because we should apply the statutory language as Congress enacted it, I dissent from Part II.A of the majority opinion.

I

"Statutory interpretation begins with the plain language of the statute. If the text of the statute is clear, this court looks no further in determining the statute's meaning." *K & N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1081 (9th Cir. 2007) (quoting *United States v. Mendoza*, 244 F.3d 1037, 1042 (9th Cir. 2001) (internal citations omitted)).  Here, we need look no further than the text of the Federal Rail Safety Act (FRSA), 49 U.S.C. § 20109(a), which states, in pertinent part:

> (a) In general.—A railroad carrier engaged in interstate or foreign commerce, a contractor

or a subcontractor of such a railroad carrier, or an officer or employee of such a railroad carrier, may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's **[i]** lawful, **[ii]** good faith act **[iii]** done, or perceived by the employer to have been done or about to be done—

> (1) to provide information, directly cause information to be provided, or otherwise directly assist in any investigation regarding any conduct which the employee reasonably believes constitutes a violation of any Federal law, rule, or regulation relating to railroad safety or security, or gross fraud, waste, or abuse of Federal grants or other public funds intended to be used for railroad safety or security, if the information or assistance is provided to or an investigation stemming from the provided information is conducted by—[various agencies or individuals];

> (2) to refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security;

> (3) to file a complaint, or directly cause to be brought a proceeding related to the enforcement of this part or, as applicable to railroad safety or security, chapter 51

or 57 of this title, or to testify in that proceeding;

(4) to notify, or attempt to notify, the railroad carrier or the Secretary of Transportation of a work-related personal injury or work-related illness of an employee;

(5) to cooperate with a safety or security investigation by the Secretary of Transportation, the Secretary of Homeland Security, or the National Transportation Safety Board;

(6) to furnish information to the Secretary of Transportation, the Secretary of Homeland Security, the National Transportation Safety Board, or any Federal, State, or local regulatory or law enforcement agency as to the facts relating to any accident or incident resulting in injury or death to an individual or damage to property occurring in connection with railroad transportation; or

(7) to accurately report hours on duty pursuant to chapter 211.

49 U.S.C. § 20109(a).

Under § 20109(a), an employer may not discriminate against an employee based on an act by the employee that is: (i) lawful; (ii) in good faith; and (iii) done or perceived by

the employer to have been done in order to accomplish one of the particular actions specified in subsections (a)(1) through (7).    Subsection (a)(2) (the basis for Curtis Rookaird's complaint) specifies the following action: "to refuse to violate . . . any Federal law, rule, or regulation." § 20109(a)(2).

Rookaird claims he was fired in retaliation for refusing to violate a federal rule requiring the performance of an air-brake test.    Accordingly, to prevail on his complaint, Rookaird must show that his performance of the air-brake test was (i) lawful, (ii) in good faith, and (iii) done (or perceived by BNSF to have been done) to refuse to violate federal law. *See id.*  But Rookaird cannot satisfy the third prong of this test.  The district court determined that federal law did not require Rookaird to perform an air-brake test on the train, and Rookaird presented no evidence regarding BNSF's perception of what federal law required.  Because Rookaird did not "refuse to violate . . . any Federal law," his claim fails as a matter of law. *See id.*

## II

In reaching the contrary conclusion, the majority rewrites the statutory language.  The majority asserts that because the statute refers to an employee's "lawful, good faith act," § 20109(a), employees should be able to prove they engaged in the conduct listed in subsection (a)(2) (i.e., refusal "to violate . . . any Federal law") merely by showing they had a good faith belief that they were doing so.  Maj. at 12.    In effect, the majority asserts that we must read subsection (a)(2) as referring to an employee's "lawful, good faith act done . . . to refuse [*to take an action that in the reasonable belief of the employee would*] violate . . .  any Federal law."

The majority offers many justifications for this extra-textual interpretation, but none of them have merit.  First, the majority claims that giving effect to the statute as written would "incorrectly narrow[] its intended scope."  Maj. at 12.  According to the majority, had Congress intended the particular conduct listed in § 20109(a)(2) to be a refusal to "violate . . . any Federal law," it would have inserted the word "actually" before the word "violate."  Maj. at 12.  By failing to add the word "actually," the majority claims, Congress established that it did not intend to refer to an *actual* violation of federal law.  Maj. at 12.  This is nonsensical on its face.  Congress does not have to insert the words "actually" or "literally" or say "and we really mean it" in order for statutory language to mean what it says.

The majority next claims that its rewriting of the statute to insert "to take an action that in the reasonable belief of the employee would" between "to refuse" and "to violate . . . any Federal law" in (a)(2) must be correct for policy reasons.  Absent the added language, the majority asserts, an employer could "nefariously order[] an employee to perform an act" that the employer and employee both believe would violate federal law, fire the employee for refusing to follow the order, and then escape liability if it turns out that the act did not violate federal law due to some technicality.  Maj. at 13.  But the text of the statute addresses that exact situation without the majority's help.  Under subsection (a), FRSA is violated if the employee takes an act that is "perceived by the employer to have been done . . . to refuse to violate . . . Federal law."  In the majority's hypothetical, the employer would be liable because, even though no actual violation

occurred, the railroad fired the employee for a "perceived" refusal to violate federal law. *See* 49 U.S.C. § 20109(a)(2).[1]

Nor do the majority's references to § 20109(a)(4) and (a)(7) support its interjection of new language into the statutory text. Maj. at 13–14, 15. The majority notes that district courts have read § 20109(a)(4) (covering employees who notify employers of work-related injuries or illnesses) as applying regardless whether the injury or illness is work-related. Maj. at 13–14. But we should consider district courts' interpretations of statutes only to the extent they are persuasive; district courts' refusal to give effect to the statutory language based on policy preferences is not. Similarly, the fact that Congress used the word "accurately" in § 20109(a)(7) (covering employees who "accurately report hours on duty"), Maj. at 15, does not support (or even logically relate to) the majority's conclusion that it must rewrite subsection (a)(2).

Finally, the majority's theory that Congress's use of the phrase "good faith" in subsection (a) requires us to read a "reasonable belief" element into subsection (a)(2), Maj. at 12, is inconsistent with the statute as a whole. First, subsection (a)(1) already includes a "reasonable belief" element: it prohibits discrimination when an "employee's

---

[1] In a footnote, the majority argues that "this view misreads the statute," because "[t]he phrase 'perceived by the employer' gives an employee recourse whether the employee actually engaged in the act or whether the employer merely believes the employee engaged in the act." Maj. at 13 n.2. The majority's reading of the statute is correct — except that the majority misses the point that the "act" at issue is the refusal "to violate . . . Federal law." § 20109(a)(2). An employee has no recourse under the statute if the employee refused to engage in a perfectly lawful act, unless the employer *believes* the employee refused "to violate . . . Federal law." *Id.*

lawful, good faith act" was done "to provide information . . . regarding any conduct which the employee *reasonably believes* constitutes a violation."  49 U.S.C. § 20109(a)(1) (emphasis added).  Congress's use of "reasonably believes" in (a)(1) but not in (a)(2) raises the presumption that Congress did not intend to import a reasonable belief component into the refusal "to violate . . . Federal law." § 20109(a)(2).    "[W]hen Congress includes particular language in one section of a statute but omits it in another[,] . . . this Court presumes that Congress intended a difference in meaning." *Dig. Realty Tr., Inc. v. Somers*, 138 S. Ct. 767, 777 (2018) (quoting *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014)).

The majority rejects this well-established principle of interpretation on the ground that the phrase "reasonably believes" is "not part of an associated group or series, or a statutory listing or grouping." Maj. at 15.    This is a misunderstanding of how the interpretive canon applies here. Subsections (a)(1) through (a)(7) are part of an "associated group or series" because each subsection enumerates purposes for which an employee might undertake the "lawful, good faith act" described in § 20109(a). *See Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). Accordingly, it is justified to infer that the exclusion of "reasonably believes" from subsection (a)(2) but not from subsection (a)(1) was "by deliberate choice, not inadvertence." *Id.*

Contrary to the majority, therefore, there is no basis for concluding that Congress merely slipped up when it omitted the "reasonable belief" element from subsection (a)(2). Rather, recognizing the complexity of railroad regulation, Congress could have reasonably concluded that an employer is better positioned to know the law than the employee.

Therefore, Congress could have intended "to provide broader protections for employees who complain about perceived but nonexistent safety violations — as it has, for example, in Title VII and other statutes protecting employees from discrimination in the workplace — and narrower protections for employees whose refusals to" work might "significantly impede" railroad operations. *See Koch Foods, Inc. v. Sec'y, U.S. Dep't of Labor*, 712 F.3d 476, 483 (11th Cir. 2013).

Conversely, because subsections (a)(1) through (a)(7) are an associated list of actions, if we are obliged to read the phrase "good faith" in the introductory section into subsection (a)(2), as the majority claims, we must also read it into subsections (a)(1) and (a)(3) to (7); there is no principled basis to do otherwise. But this would render the "reasonable belief" element in subsection (a)(1) superfluous, and courts are reluctant to adopt a reading that would "treat statutory terms as surplusage.'" *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788 (2011) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)).

In sum, there is no basis for refusing to give effect to the plain language of the statute. Because federal law did not require the performance of an air-brake test, the district court erred in concluding that Rookaird could establish that he refused "to violate . . . any Federal law," § 20109(a)(2), and therefore erred in denying BNSF's motion for judgment as a matter of law on the protected activity element. Accordingly, I respectfully dissent from Part II.A of the majority opinion.